22252, 22257. MILTON FRANK ALLEN PUBLICATIONS, INC., et al. v. GEORGIA ASSOCIATION OF PETROLEUM RETAILERS, INC.; and vice versa.

ARGUED NOVEMBER 13, 1963—DECIDED FEBRUARY 10, 1964.

*Sams & Sams, Augustine Sams, Marion A. Sams, Edward S. Sams*, for plaintiffs in error.

*James A. Mackay, Thomas O. Davis*, contra.

GRICE, Justice. This controversy is over the validity and construction of a contract for the publication of a trade magazine.

The litigation began with the filing of a petition in the Superior Court of DeKalb County by the Georgia Association of Petroleum Retailers, Inc., hereinafter referred to as the "Association," against Milton Frank Allen Publications, Inc., hereinafter referred to as the "Publisher," and Milton Frank Allen.

The petition, insofar as material here, made the allegations which follow.

The plaintiff Association is a non-profit, non-stock corporation, organized to promote the welfare and advancement of retailers of petroleum products and their affiliated and interrelated businesses.

The Association, through its president and treasurer, on March 26, 1946, entered into a purported contract with Allen, for the publication of "The Georgia Petroleum Retailer." Allen organized the Publisher which claims the right to publish and does

publish such magazine under the direction of Allen, its president and editor. There is an actual controversy between the Association, on the one hand, and Allen and the Publisher, on the other, with respect to the force, binding effect and validity of that contract, the material provisions of which are hereinafter set forth.

The Association contends that the purported contract is invalid because: (a) it is ultra vires in that it purports to authorize Allen and his assignee, the Publisher, to substitute their judgment for that of the officers of the Association in promoting and carrying out the purposes for which the Association was chartered, and to unreasonably prohibit and restrict its officers from communicating with its members and with other retailers of petroleum products through printed matter; (b) it is unreasonable in that it contemplates rendition of personal services, including exercise of judgment, by an individual for 90 years, which is beyond the Association's corporate existence and the individual's life expectancy, and the provision that Allen may incorporate and transfer such contract to a proposed corporation is an unlawful delegation of the Association's corporate authority to another, yet unorganized, corporation and amounts to the surrender and restriction of the Association's right to exercise its judgment in communicating with its members through printed words; (c) it is vague, uncertain, indefinite and ambiguous in its terms and hence unenforceable because it fails to define the term "official organ," and fails to specify the rights of the respective parties in determining the content of the printed matter, or which party has the right to formulate the words, texts, and contents of such communications, or what matter may be included other than "information to be disseminated to the Association members and other retailers of petroleum products," or the meaning of the term "to speak officially for the Association in printed form"; (d) the purported contract is contrary to public policy applicable to control and management of corporate affairs by its own officers and members.

The Association contends that it has the right to determine what information published in printed form best serves its purposes and those of its members, that the free exercise of its judg-

ment in determining its policies and methods cannot lawfully be delegated to Allen and the Publisher, that they have no right to dictate its policies and determine what information shall be published for it, and that it has the right to carry out and perform its objects and purposes.

Allen and the Publisher, on the contrary, contend that they, and not the Association, have the right, under such contract, to determine what information shall be printed in the magazine and disseminated to the members of the Association as the official expression of its policies and the method of accomplishing its purposes, and that they are not required to publish information desired to be published by it, if they have a different opinion.

Allen and the Publisher claim the magazine is the "official publication" of the Association, and print that designation in it. The Association denies that they have the right to hold out said magazine as its "official publication" and "official organ." On January 11, 1963, its attorney so notified them and also notified them that the subscription price included in membership fees collected by them belonged to the Association. Thereafter, on February 22, 1963, the Association's attorney requested that Allen and the Publisher make no suggestion in the forthcoming issue of the magazine that it had the Association's sanction and that it delete all reference to the effect that it was the official organ of the Association, and also demanded that the Publisher remit to the Association all subscription fees collected from its members subsequent to its notification of January 11, 1963.

Allen and the Publisher refused to delete such references but insisted upon the right to publish the magazine as such official organ and refused to remit the subscription fees so collected. Also, in the following issue of the magazine, they again claimed that it is the "official publication" and "official organ" of the Association.

Unless restrained and enjoined from so doing, they will continue to claim that said magazine is speaking officially for the Association despite the fact that it does not supply information.

Allen and the Publisher, since January 11, 1963, have collected membership fees from the Association's members, and have deducted therefrom $1.50 as each member's subscription

fee to said magazine. These sums belong to the Association, but Allen and the Publisher refuse to account to it therefor.

The prayers were for (a) process; (b) declaration of the rights and legal relations of the parties with respect to the purported contract; (c) declaration that the contract is invalid; (d) temporary and permanent injunction against Allen and the Publisher representing in the magazine that it is the "official organ" or "official publication" of the Association and from representing that it is the official spokesman for the Association; (e) an accounting for all subscription fees collected; (f) rule nisi; and (g) general relief.

Allen and the Publisher filed general and special demurrers to this petition. They also interposed an answer and cross action which, under our view of the case, need not be recited here.

The trial court overruled the demurrers. Upon an interlocutory hearing with evidence, it entered an order ruling the contract valid, construing it and declaring the rights and legal relations of the parties, and temporarily enjoining all parties from using the magazine in any manner other than as set forth in such order.

Allen and the Publisher assigned error as follows: (1) the overruling of their general and special demurrers; (2) the denial of their so-called "plea" asserting lack of authority for the filing of this suit; (3) the grant of the injunctive relief above referred to; and (4) the paragraph of the interlocutory order which purports to construe the contract.

In its cross bill of exceptions, the Association assigned error upon the ruling that the contract is valid.

The contract provides in material portions as follows:

"That [the Association] is incorporated as a non-profit association to promote and advance the welfare of retailers of petroleum products and their affiliated and interrelated businesses. . . . To accomplish the object of the corporation it is necessary that a magazine for said industry be published at least monthly and circulated among those engaged in the retail sale of oils and petroleum products. [Allen] agrees to publish a magazine, known as The Georgia Petroleum Retailer, to meet such requirements of [the Association]. It is therefore agreed:

. . . in consideration for the services rendered by [Allen] in publishing a magazine designed to promote the general welfare, aims and purposes of those who are members of the association, [it] does hereby make and declare the following agreement with [Allen].

"I. That [Allen] for a period of thirty years after this date [March 26, 1946], and with the option of renewing for two additional and consecutive periods of thirty years each, has the sole and exclusive right to publish a magazine, owned by [Allen] and known as the Official Organ of the Association . . . and which magazine shall continue to hold such official sanction exclusively during the life of this contract and any renewal under option.

"II. A subscription fee for said magazine amounting to $1.50 per year for each member of the Association shall be paid to [Allen], except that during the existence of a contract, separate and distinct from this one, between [the Association] and [Allen] for the soliciting of memberships, such $1.50 shall be first deducted from the membership fees by [Allen].

"III. [The Association] agrees to cooperate fully with [Allen] and will lend [him] such assistance as may be necessary from time to time in furnishing information for publication in said Official Organ.

"IV. [The Association] agrees that [Allen] shall have, by virtue of this contract, the sole and exclusive sanction of the Association . . . for The Georgia Petroleum Retailer and that no other printed medium will be used or sanctioned, directly or indirectly, to disseminate information to the Association members and other retailers of petroleum products or to speak officially for the Association in printed form than The Georgia Petroleum Retailer and that said magazine shall have the right of being known exclusively as The Official Organ of [the Association], as well as the right to $1.50 subscription for each member per year during the life of this contract with the right to renew as hereinbefore provided.

"V. Said magazine shall be published, not less than monthly, at the expense of [Allen]. It shall belong to [him]. This publication shall be neat and will be a type of magazine which

670

shall not reflect discredit on [the Association]. [Allen] agrees that in furtherance of this purpose it shall not be the practice to accept any advertising of intoxicating beverages or tobacco in this magazine.

"[VI. not involved here.]

"VII. [Allen] may incorporate and transfer this contract to a proposed corporation, and in this event, the contract shall continue between [the Association] and said corporation, which is substituted for [Allen] with all rights herein preserved."

■ Considering the petition in the face of the general demurrers interposed by Allen and the Publisher, we first ascertain whether the facts pleaded entitle the Association to any relief, legal or equitable.

(a) For initial determination is whether, under the allegations, the Association is entitled to a declaratory judgment. It seeks both a declaration of the rights and legal relations of the parties and also a declaration that the contract is invalid, unenforceable, and not binding on the parties.

It is noteworthy, from what is alleged, that the parties have already acted in defiance of each other as to the contract. The Association has renounced it as invalid and unenforceable. It alleges that on January 11, 1963, it notified Allen and the Publisher that they have no right to hold the magazine out as the Association's official organ or publication and that the subscription fee included in the membership fees collected is its property; and that on February 22, 1963, upon learning that another issue of the magazine was being prepared, it requested that the Publisher delete all reference to the effect that the magazine was the Association's official organ and demanded that the Publisher remit all sums collected as subscription fees from its members subsequent to January 11, 1963. It further alleges that Allen and the Publisher have refused these demands and have insisted upon their right to publish the magazine as the official organ of the Association and have declined to remit the subscription fees. It is thus shown that the petitioning Association has already elected its course and hence has no need for guidance as to what step to take.

This situation is controlled by such decisions as *Rowan v.*

*Herring,* 214 Ga. 370, 374 (105 SE2d 29), and *Pinkard v. Mendel,* 216 Ga. 487 (2) (117 SE2d 336). The former case stated: "The object of the declaratory judgment is to permit determination of a controversy *before* obligations are repudiated or rights are violated." (Emphasis ours.) The latter case quoted that statement and then recited: "And where, as here, the petition shows that the rights of the parties have *already* accrued and no facts or circumstances are alleged which show that an adjudication of the plaintiff's rights is necessary in order to relieve the plaintiffs from the risk of taking any future undirected action incident to their rights, which action without direction would jeopardize their interest, the petition fails to state a cause of action for declaratory judgment."

Therefore, we hold that the petition here does not allege facts entitling the Association to a declaratory judgment.

(b) Next, we determine whether the petition alleges facts warranting injunctive relief against the representation in such magazine that it is the Association's official organ or official publication. Whether this relief is warranted depends upon whether the contract is valid or invalid. The Association predicates its claim to this relief upon its contention that the contract is invalid. But if it is valid, as Allen and the Publisher contend, they are within their rights in continuing to make such representation. We now appraise the grounds relied upon for the Association's contention that the contract is invalid and hence not enforceable.

(i) It is not invalid as ultra vires in that it purports to authorize Allen and the Publisher to substitute their judgment for that of the Association's officers in promoting and carrying out the purposes for which the Association was chartered. Nor is it unreasonable in that it prohibits and restricts the Association's officers from communicating with its members and other petroleum retailers through printed matter. Nowhere does the contract seek to abrogate the right of the Association's officers and directors to determine the policies and take the action deemed for the best interest of the Association and its members. Nor does it surrender the management of the corporation to other parties so as to divest the officers and directors of the

Association of the exercise of judgment as to what is in the best interest of the organization, and thus violate public policy as in such cases as *Morel v. Hoge,* 130 Ga. 625 (61 SE 487, 16 LRA (NS) 1136, 14 AC 935); *English v. Rosenkrantz,* 152 Ga. 726 (111 SE 198); *Wheeler v. Layman Foundation,* 188 Ga. 267, 270-271 (3 SE2d 645).

(ii) Neither is the contract invalid as contemplating the rendition of personal services, including the exercise of judgment, by an individual for a length of time beyond the Association's corporate existence and the life expectancy of the individual, or as unreasonably and unlawfully delegating corporate powers to a then unorganized corporation. The power of a corporation, by virtue of its existence, to enter into contracts (*Code Ann.* § 22-1827 (c)) is not limited to the term of its incorporation, in view of the charter renewal power of *Code Ann.* § 22-1827 (h). Nor is the span of human life a limitation upon that power.

(iii) Nor is the contract invalid as vague, uncertain, indefinite, and ambiguous in that it fails to define the meaning of the terms "official organ" and "to speak officially for the Association in printed form," and fails to specify the rights of the respective parties in determining the content of the printed matter, or which party has the right to formulate the words, texts, and contents of such communications, or what matter may be included in the magazine.

Any failure of the contracting parties to define such terms and to specify as to those items does not result in the document being invalid. The rule applicable here has been aptly stated: "Nor is it necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves. That is certain which may be made certain." *Dorsey v. Clements,* 202 Ga. 820, 824 (44 SE2d 783, 173 ALR 509) (one Justice dissenting, another not participating).

Also, "The law leans against the destruction of contracts on

the ground of uncertainty, and a contract will not be declared void on that ground unless, after reading it and interpreting it in the light of the circumstances under which it was made, and supplying or rejecting words necessary to carry into effect the reasonable intention of the parties, their intention cannot be fairly collected and effectuated," a quotation approved in *Leffler Co. v. Dickerson*, 1 Ga. App. 63 (1) (57 SE 911).

No such lack of certainty exists in this contract. From what appears in the petition the defect here is not uncertainty, but ambiguity. "There is a difference between ambiguity, which imports doubleness and uncertainty of meaning, and that degree of indefiniteness which imports no meaning at all. The former can be explained by parol. The latter cannot be merely explained, but a deficiency must be supplied." *Jones v. Ely*, 95 Ga. App. 4 (5) (96 SE2d 536).

(iv)   The fourth ground of attack, that the contract is contrary to public policy applicable to the control and management of corporate affairs by its own officers and directors, is not meritorious, in view of what has been stated in (i), above.

Since none of these attacks upon the validity of the contract can, as we appraise it, be sustained, the Association has not pleaded a cause of action for relief by injunction.

(c)   The contract being valid, as ruled in (b), above, no cause of action is stated for an accounting as to the subscription fees collected by Allen and the Publisher.

(d)   However, the petition does authorize a construction of the contract. As stated in (b)(iii), above, the contract, while not invalid for uncertainty, does contain ambiguous language. The allegations of the petition show that the basis of the controversy here is the meaning of that language and particularly of the word "publish." This court has held that "A prayer for general relief is sufficient to grant a complainant such relief as is consistent with and entirely within the scope of the pleadings provided the nature of the case is such that under such prayer some character of relief may be granted which is consistent not only with the case made by the petition but also with some specific prayer therein." *Matson v. Crowe*, 193 Ga. 578 (4) (19 SE2d 288). See also, *Taylor v. Cureton*, 196 Ga.

28, 33 (25 SE2d 815). Here, there is a prayer for general relief and the relief of construction is consistent with the case made by the petition and with the specific prayer that "the court declare the rights and legal relations of the parties with respect to the purported contract."

In view of the foregoing, we conclude that the petition alleges a cause of action, hence, the general demurrers challenging the petition as not setting forth a cause of action for any relief whatever were correctly overruled.

■ The further demurrers upon the grounds that the petition fails to set forth a cause of action for other specific relief and on account of other alleged defects are not meritorious in view of the ruling in Division 1 (d), above, that the petition alleges a cause of action for some relief. They were properly overruled.

■ Upon careful consideration of the numerous grounds of special demurrer, we deem them to be without merit and thus properly overruled.

■ The second assignment of error, as to the denial of the so-called "plea" of Allen and the Publisher, is not based upon a ruling which can be reviewed. The contention is that by entering the interlocutory order in this case, the judge denied their assertion that the persons filing this suit in the name of the Association lacked authority to do so. However, that assertion was made in their answer and there was no direct ruling on that contention and therefore nothing for us to review.

■ The assignment of error based upon the paragraph of the interlocutory order which construed the contract is well taken. Even assuming that such judgment was intended as a construction of the contract rather than as an unauthorized declaratory judgment, we conclude that it was erroneous. There are ambiguities in the contract which create issues of fact for a jury. *Code* § 20-701; *Summerour v. Pappa*, 119 Ga. 1 (45 SE 713). There was no waiver of jury trial and hence construction by the court was error.

This holding makes it unnecessary to consider another objection to this order based upon the exclusion of testimony as to the meaning of the word "publish."

■ Also, the error assigned on the grant of injunctive relief is meritorious. All the parties were enjoined ". . . from using the [magazine] . . . in any manner other than as above set forth in this order and decree, until further order of the court."

Thus, the injunctive relief was expressly made to rest upon the court's construction of the contract, which, as held in Division 5, was improperly provided. The granting of such injunction was erroneous.

As to the main bill of exceptions, the judgment overruling the demurrers to the petition is affirmed and the judgment on the interlocutory hearing is reversed, for the reasons stated in the opinion.

As to the cross bill of exceptions, the judgment is affirmed, for the reasons stated in Division 1 (b).

*Judgment affirmed in part and reversed in part on main bill. Judgment affirmed on cross bill. All the Justices concur.*