24714. MILTON FRANK ALLEN PUBLICATIONS, INC. v. GEORGIA ASSOCIATION OF PETROLEUM RETAILERS, INC.

ARGUED JUNE 12, 1968—DECIDED JULY 16, 1968—
REHEARING DENIED JULY 30, 1968.

*John L. Westmoreland, Jr., Donald E. O'Brien, Westmoreland, Hall & O'Brien,* for appellant.

*Mackey & Elliott, James A. Mackey, C. E. Gregory, Arnall, Golden & Gregory,* for appellee.

GRICE, Justice. In an action to enjoin the alleged breach of certain contracts the trial court granted the defendant's motion for judgment notwithstanding a mistrial. That judgment, rendered by the Superior Court of Fulton County in a suit brought by Milton Frank Allen Publications, Inc., against the Georgia Association of Petroleum Retailers, Inc., is for review.

Several contracts were executed between the parties, but only two are involved here. One relates to the solicitation by the plaintiff of members in the defendant Association, and the other pertains to the publication by the plaintiff of the defendant's official organ. Both contracts were executed on April 11, 1946, between the defendant Association and Milton F. Allen.

They recite that the defendant is incorporated as a non-profit association "to promote and advance the welfare of retailers of petroleum products and their affiliated and interrelated businesses," etc. Both contracts state that they shall run for 30 years from date with Allen having the option of renewing for two additional and consecutive periods of 30 years each, and that Allen may incorporate and transfer the contracts to a proposed corporation, in which event the contracts shall continue in force.

The membership contract, insofar as essential here, also provides in substance the following: that to accomplish the object of the corporation it is necessary that memberships in the Association be sold to those engaged in the retail petroleum business; that Allen agrees to act as an independent sales agent and

procure such memberships; and that in consideration for the services rendered by Allen in obtaining or soliciting such memberships, the parties make the agreement with the terms hereinafter set forth.

Allen, for the original and renewal periods, if he exercises the option, has the sole and exclusive right to solicit members for the Association. The membership dues shall be fixed at not less than $10 per year, and the Association may by two-thirds majority vote of its board of directors fix the dues at a higher amount not exceeding $25.

Such dues shall include one year's subscription to a magazine which is the subject matter of the publication contract (entered into simultaneously), the subscription price of which shall be $1.50 per year for each member as long as such publication contract exists.

In consideration for Allen's services in obtaining memberships, a commission of $7.50 shall be first deducted from each membership fee of $10, and as long as the Association and Allen have the publication contract an additional sum of $1.50 for the subscription fee for the magazine shall be deducted from the $10 membership fee and the balance of $1.00 shall be immediately deposited in a bank to the credit of the Association.

Allen agrees to furnish to the Association desk and office space.

The Association agrees to co-operate fully with Allen and to render to him such assistance as may be necessary in obtaining memberships.

Allen shall have "the sole and exclusive right" to solicit memberships. The Association will not directly or indirectly solicit members, except through Allen. Should the dues be increased, that portion alloted herein to Allen and deductible by him as commissions for obtaining members shall be increased in the same ratio.

The publication contract, in essential part, is substantially the following: that to accomplish the object of the corporation it is necessary that a magazine be published at least monthly and circulated among those in the retail sale of oils and petroleum products; that Allen agrees to publish a magazine to meet such requirements; and that the parties in consideration for Allen's

services in publishing such magazine, make the following agreement.

Allen, for the original and optional renewal periods above referred to, has the sole and exclusive right to publish a magazine, owned by him and known as "The Georgia Petroleum Retailer," which is hereby adopted as the official organ of the Association and which shall continue to hold such official sanction exclusively during the life of this contract and any renewal thereof.

A subscription fee for said magazine of $1.50 per year for each member of the Association shall be paid to Allen, except that during the existence of the membership contract (entered into simultaneously), such $1.50 shall be deducted by Allen from the membership fee.

The Association will co-operate fully with Allen and will render such assistance as necessary in furnishing information for publication therein, and "no other printed medium will be used or sanctioned, directly or indirectly, to disseminate information to the Association members and other retailers of petroleum products or to speak officially for the Association in printed form. . ." The magazine shall be published not less than monthly at the expense of Allen and shall continue to belong to him. It shall be such as will not reflect discredit on the Association.

For a more detailed recital of the contents of this agreement, see *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.,* 219 Ga. 665, 668-670 (135 SE2d 330).

The plaintiff corporation, as transferee of both contracts, alleged, insofar as necessary to recite here, that the defendant Association is breaching the membership contract by purporting to decrease as of January 1, 1965, the membership dues of the Association to a stated amount and by determining that dues to the national organization will not be a part of those to the defendant Association.

The plaintiff also alleged that the defendant, by notifying its members of its purported decrease of dues, is violating the publication contract, which provides that no printed medium other than the magazine will be used to disseminate information to

the membership or to speak officially for the defendant Association in printed form.

The plaintiff alleged that these breaches are causing it irreparable damage in given particulars, and prayed that the defendant be enjoined from continuing such breaches.

This petition was upheld as against the general demurrers of the defendant in *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.*, 221 Ga. 495 (145 SE2d 497). There, we held that the petition alleged a breach of contract by allegations that the defendant "had attempted to lower the dues of its members when said contract provided only for increasing the dues and made no provision for lowering them, and as petitioner set forth other grounds for equitable relief." Hn. 1. We also held that the petition was not subject to attacks that the membership contract was unauthorized and ultra vires, because "such defense cannot be raised by general demurrer where the petition does not set out the charter of the defendant corporation or any of its material parts, and here, petitioner is not required to do so." Hn. 2.

In its answer to the foregoing petition the defendant Association alleged essentially that it was a non-profit corporation; that Allen, the transferor of the contracts, was one of the incorporators of the Association; that when the contracts were entered into he was secretary and executive secretary of the defendant corporation and continued as such until 1961; that in such capacities he was managing head of the business affairs of the Association and stood in a fiduciary relationship to the defendant and to its members and was under a duty not to use the corporation for his own personal gain; that he persuaded the defendant's board of directors to enter into said contracts; that the contracts were never submitted to the members for their approval; that Allen concealed from the officers and directors the benefits he would receive therefrom; that because of the contracts the defendant has been severely handicapped by lack of funds to carry out the purposes of its charter.

The answer made several attacks upon the membership contract.

It averred in substance that such contract is against public

policy because it utilizes for private gain the rights and franchises granted to a non-profit corporation, and because it results in disposition of the Association's franchise. The answer asserted that such contract is void because it divests members and directors, for 90 years, of authority and duties imposed upon them as to government and management of the corporation in carrying out its charter; and because it exceeds the authority of officers and directors since they had no right to restrict future action with respect to the amount of fees and dues, or to divest the corporation of three-fourths of its membership fees for 90 years, or to bind the corporation for 90 years by obligating future directors and members to renew or breach the contract. The answer further urged that the membership contract and the publication contract are voidable because they were entered into in violation of the fiduciary duty of an officer of a corporation to the corporation and its members.

The answer prayed that the membership contract, and two others not involved here, be declared void, or in the alternative be declared voidable; that enumerated injunctive relief be granted, including prohibition of the plaintiff from soliciting or collecting dues and fees from the Association's members; and for general relief.

The case came on for a hearing on the prayers for temporary injunction and the trial judge refused such relief. We affirmed upon the ground that the evidence was conflicting on the issues raised by the pleadings, and therefore that there was no abuse of discretion in denying the injunction. *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.,* 223 Ga. 784 (158 SE2d 248).

Thereafter, a trial was had. Considerable testimony was given by Allen, by the Association's past and present officers and employees, and by persons connected with the petroleum industry elsewhere. Also, there was much documentary evidence relating to the events involved here. A mistrial resulted. Subsequently the defendant Association's motion for judgment notwithstanding the mistrial was granted and judgment entered declaring the publication and membership contracts void as to their executory features as of the date of the prior order denying the plaintiff an

interlocutory injunction. Following that judgment the plaintiff moved that the court modify it so that the invalidity would date from that judgment, February 26, 1968, instead of from the date of denial of the plaintiff's prayers for temporary injunction, June 22, 1967. This motion was denied.

The appeal is from the judgment notwithstanding the mistrial, and also from the denial of such motion to modify that judgment.

■ We are free, upon this appeal, to pass upon the attacks lodged against the two contracts in question. In neither of the three prior appearances of this litigation has this court ruled so as to preclude this determination.

In the first appearance, *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.*, 219 Ga. 665, supra, we reviewed rulings made in an action brought by the Association against Allen and the corporate publisher. Only the publication contract was involved. The Association's petition alleged that such contract was invalid in stated particulars, to wit: that it was ultra vires; unreasonable as to duration; vague, uncertain, indefinite and ambiguous; and contrary to public policy as to control and management of a corporation. Allen and the corporate publisher demurred generally. This court, among other rulings, held that the Association's petition failed to plead a cause of action. While some of the attacks made there are similar to those here, they were addressed only to the publication contract upon its face and did not involve the evidence.

In the second appearance, this court held that the attack of ultra vires upon the membership contract could not be made by general demurrer where the petition did not set forth the Association's charter or any of its material parts. *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.*, 221 Ga. 495, supra.

In the third appearance, this court affirmed the denial of a temporary injunction. *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.*, 223 Ga. 784, supra. It pointed out at page 787 that upon the second appearance, 221 Ga. 495, supra, neither the trial court nor this court passed upon or made any ruling on the Association's attacks upon the validity of the publication or membership contracts.

Therefore we cannot agree that this court has held that both of these contracts are valid against the attacks involved in this appeal. We proceed now to a determination of them.

■ There is no merit in the contention that the membership and publication contracts are voidable because of Allen's fiduciary relationship with the Association and his duty not to use the corporation for his own personal gain.

The proposed contracts were read "word for word" at the March 26, 1946, meeting of the Association's board of directors, were held over for further study, were considered again and acted upon favorably at the April 11, 1946, board meeting by a vote of 11 to 2. Thereupon the president and the treasurer of the Association executed them on behalf of the corporation. No fraud, bad faith, unfairness or irregularity whatever appears as to their consideration and execution.

At that time Allen had no duties which made it improper for him to contract with the Association. His duties as executive secretary of the Association and secretary of the board of directors were not those which required the making of policy, but were clerical and administrative. The bylaws enumerated his duties, which were of that type, and recited that he was "to act under the direction of the President and the Board of Directors," and "in general be the managing head of the business affairs, subject always to the wishes of the officers and Board of Directors."

■ It was error to declare the publication contract void. In the prior case of *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.*, 219 Ga. 665, supra, we upheld on general demurrer the validity of the publication contract. We have re-examined that contract in the light of the evidence and find no basis for declaring it void.

■ However, we find that the membership contract is void.

We predicate our findings upon the basis that it divests the directors of the defendant Association of authority and duties imposed upon them in the government and management of the corporation.

Specifically, it divests them of the power to determine in their discretion from time to time what is for the best interest of the Association and its members in the vital areas of membership

and dues, and contracts away the greater portion of the Association's funds.

The Association's charter, obtained in 1941, provides that the corporation is not organized for pecuniary gain and that no capital stock will be issued. It recites, in substance, that the purposes of the Association are to promote the fraternity, welfare and advancement of retailers of petroleum products, to foster co-operation among those engaged in the petroleum industry, to work for and encourage the enactment of favorable legislative measures, to obtain better working conditions for its members, and to negotiate as a collective bargaining body to prevent unfair trade practices, discriminatory regulations and controversies between those connected with the petroleum industry.

Its bylaws provide that "The business of the corporation shall be conducted by officers and directors . . ." and that the board of directors shall "Consider the affairs of the corporation in accordance with the bylaws and policies laid down by the corporation from time to time; report all matters of interest to the association; supervise the affairs of the association and devise mature measures for its growth and prosperity . . ." The bylaws also provide for a standing committee on membership whose duty it is "to enroll in this association representative and outstanding businessmen engaged in the businesses covered by this organization's objectives."

Abrogation of discretion and judgment, by virtue of this contract, is clearly manifest.

To begin with, the subject matter of the contract is membership and dues, both of which are absolutely necessary for the existence of the Association and for its success in carrying out its purposes.

Rather than discharging its responsibilities as to membership, the Association, by this contract, seeks to invest Allen and his transferee with them. It surrenders to Allen and his transferee, for a possible 90 years, the sole and exclusive right to solicit members and promises that it will refrain from soliciting them.

Furthermore, by this same contract, the Association agrees to limits as to its own membership dues. Instead of retaining the right to fix the amount as it sees fit to meet changing con-

ditions, it agrees for a period which could run for 90 years that such dues will be $10 per year, and that they may be increased up to $25 by a two-thirds vote of the board of directors after giving three months notice in writing to Allen. This court, in *Milton Frank Allen Publications, Inc. v. Georgia Association of Petroleum Retailers, Inc.*, 221 Ga. 495, supra, held that under this contract the dues could not be lowered once they had been raised.

Also, by this contract, the Association agreed to pay Allen 75% of the dues for his services in soliciting members (in addition to the $1.50 he gets from the dues of each member under the publication contract). The practical effect of this is to divest the Association of the greater portion of its income and source of income, thus leaving it without funds for carrying out its objectives as stated in its charter. For example, where a member's dues are $10 per year, the Association gets only $1.00 from these dues; and where dues are $20, the Association gets only $3.50.

Because of this divestment of the directors' authority, and its abrogation to others, the contract is void as against public policy.

This feature contravenes the statute under which this corporation was chartered. Ga. L. 1937-38, Ex. Sess., pp. 214, 239 (*Code Ann.* § 22-1864). That statute provides that subject to such limitations as may be contained in the charter or bylaws, the board of directors "shall have full control over the affairs of the corporation. . ." Here, there was no such limitation.

This court has on several occasions held invalid contracts which sought to restrict the management and control of corporate affairs so as to prevent free exercise of judgment. See in this connection, *Morel v. Hoge,* 130 Ga. 625 (61 SE 487, 16 LRA (NS) 1136, 14 AC 935); *English v. Rosenkrantz,* 152 Ga. 726 (1) (111 SE 198); *Wheeler v. Layman Foundation,* 188 Ga. 267, 270-271 (3 SE2d 645). While these cases involve agreements made by stockholders and officers, rather than directors as here, the principle is the same.

Insofar as directors are concerned, it has been well said that they owe their corporation and stockholders three major responsibilities, to wit: "(1) Obedience, in that they owe a duty to

act within and exercise only such corporate powers as are defined by the charter, the bylaws, the resolutions and the general law of or relating to their corporation; and (2) Diligence, in that they owe a duty to exercise reasonable care and prudence, and not be mere ornaments or figureheads; and (3) Loyalty, in that they owe a duty of undivided good faith since they are fiduciaries and trustees of their corporation and stockholders." Nadler, Georgia Corporation Law 353, § 370.

The rule is firmly established that "Contracts are ordinarily void . . . which have the effect of withdrawing from the directors the control and direction of corporate affairs, business and management, which is vested in them by law. Directors may not agree to exercise their official duties for the benefit of any individual or interest other than the corporation itself, and an agreement by which the individual directors, or the entire board abdicate or bargain away in advance the judgment which the law contemplates they shall exercise over the affairs of the corporation is void." 17 CJS 994-995, Contracts, § 199. See also, 19 AmJur2d 578, Corporations, § 1147.

This rule has been applied to various situations whereby important aspects of director judgment are sought to be contracted away to others. See, for examples in this connection, annotations to 17 CJS 993, 994-996, Contracts, § 199, supra.

For the above reasons, we conclude that the executory portion of this contract relating to membership and dues is void as against public policy.

The contentions made by the plaintiff that the defendant Association has ratified this contract and also is estopped to deny its validity are without merit. It is urged that the defendant has operated under this contract since its execution in 1946, and that it has retained the benefits accruing thereunder during that time. Neither ratification nor estoppel can result from a contract which is void as against public policy.

■ It was error to deny the plaintiff's motion to modify the judgment notwithstanding the mistrial insofar as the stated date of invalidity of the membership contract is concerned. The validity of the contract was not passed upon when the trial court denied the plaintiff's prayer for interlocutory injunction

on June 22, 1967. Therefore, the judgment should be modified so as to adjudicate the invalidity of the membership contract as of the date it was found invalid, February 26, 1968, rather than such prior date.

The judgment notwithstanding the mistrial is affirmed as to the membership contract and reversed as to the publications contract. The judgment denying the motion to modify is

*Reversed. Judgments affirmed in part, reversed in part; and reversed. All the Justices concur.*