**In re CHEROKEE RUN COUNTRY CLUB, INC., Debtor.**

**Cherokee Run Country Club, Inc., Movant,**

**v.**

**City of Conyers, Respondent.**

**No. 08–84120–JB.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 3, 2009.

**283**

Stephen H. Block, Levine, Block & Strickland, LLP, Atlanta, GA, for Debtor.

*ORDER*

JOYCE BIHARY, Bankruptcy Judge.

Debtor Cherokee Run Country Club, Inc. and the City of Conyers resolved all but one issue in debtor's motion to assume a long-term lease on a golf course owned by the City of Conyers (the "City") (Docket No. 64). The parties were unable to agree on the meaning of one section of the lease involving the City's use of free golf rounds, and they requested that the Court provide a "binding interpretation of Section 5.6". The parties asked that this binding interpretation be provided following the submission of briefs without any evidence or affidavits.

The lease at issue, dated April 30, 1998 and titled the "Second Amended and Restated Lease Agreement" (the "Lease"), was signed by the City as lessor and by Cherokee Run Golf Club, Inc. as lessee. The Lease was assigned to and assumed by Debtor on December 6, 2006. Section 5.6 of the Lease is captioned "Accommodation of Sponsors" and is divided into four subsections (a)-(d). Section 5.6(a) states that the City intends to engage sponsors to defray costs incurred by the City to develop and operate the Horse Park. The Horse Park is defined as certain land adjacent to the golf course property being leased. Section 5.6(b) limits the lessee's rights to enter into advertising or sponsorship agreements. The section at issue, Section 5.6(c) of the Lease, provides as follows:

"(c) Lessee and Owner agree that authorized representatives of both of them will, subject to availability of Rounds, be entitled to use Rounds at no charge (such free Rounds consisting of free green and cart fees) to entertain sponsors and clients and for promotional and other business purposes. Both Lessee and Owner will be entitled to negotiate discounts for the Golf Course and/or pro shop for their respective employees."

Section 5.6(d) refers to an attached exhibit containing a list of current sponsors (as of April, 1998) and states that the City will provide Lessee with written notice of any additions or deletions from the list of sponsors.

The parties have had difficulty with Section 5.6(c) and have had situations where they were unable to agree on whether a given city employee is an "authorized representative", whether Rounds are being used for the purposes set out in Section 5.6(c), and whether Rounds are available. While a "Round" is defined in the Lease as "each round of golf played by an individual playing the Golf Course, regardless of whether such individual plays 9 or 18 holes", the Lease does not define who is an authorized representative, whether rounds are available, or what is a business or promotional purpose. Neither party's brief offers an interpretation as to the meaning of Section 5.6(c) or how it should work. Instead, debtor argues that the provision is unenforceable as it violates public policy and provisions in the City Charter. The City of Conyers disagrees and maintains that the provision is lawful and fully enforceable.

 Debtor argues that Section 5.6(c) of the Lease violates public policy and exceeds the limitations of the powers granted to the City of Conyers by the State of Georgia in the City Charter. Under Georgia law, a municipal corporation is a creation of the state, and possesses only those powers granted to it. Allocations of power from the state are strictly construed, and a municipality's ability to enter into contracts is limited. A local government may bind itself by any contract which it has the right to make under its charter, but if it enters into a contract in abrogation of its delegated power or in excess of its authority, the contract is deemed *ultra vires* and void. *H.G. Brown Family Ltd. P'ship v. City of Villa Rica*, 278 Ga. 819, 819–820, 607 S.E.2d 883 (2005),

Debtor's argument that Section 5.6(c) of the Lease is against public policy is not persuasive. The Georgia statute addressing contracts against public policy is found in O.C.G.A. § 13–8–2(a) and reads as follows:

"(a) A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to:

(1) Contracts tending to corrupt legislation or the judiciary;

(2) Contracts in general restraint of trade, as distinguished from contracts in partial restraint of trade as provided for in Code Section 13–8–2.1;

(3) Contracts to evade or oppose the revenue laws of another country;

(4) Wagering contracts; or

(5) Contracts of maintenance or champerty."

O.C.G.A. § 13–8–2(a).

 The courts have held that a contract is not contrary to public policy "unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law". *Dep't of Transp. v. Brooks*, 254 Ga. 303, 312, 328 S.E.2d 705 (1985) (quoting *Porubiansky v. Emory Univ.*, 156 Ga.App. 602, 275 S.E.2d 163 (1980)). The purpose of the contract must be immoral or illegal, and the contract "is not rendered void by some illegality which is collateral to, or only remotely connected with the contract". In Georgia, "the delicate and unrefined power of courts to declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt". *Brooks*, 254 Ga. at 312, 328 S.E.2d 705 (quoting *Foster v. Allen*, 201 Ga. 348, 40 S.E.2d 57 (1946)). Section 5.6(c) of the Lease was entered into for a legal purpose and does not violate public policy. It is part of the section on accommodating sponsors and its purpose is to allow both the City and the lessee to use free Rounds of golf *only* if available and *only* by authorized representatives and *only* for sponsors or promotional or business purposes. The provision does not require a violation of any statute, and any unauthorized or inappropriate request by the City need not be honored by the lessee.

The Court is also not persuaded that the City exceeded its powers under the Charter when it entered into this forty seven (47) year lease in 1998. The Charter allows the City to "contract and be contracted with;" to "acquire and hold any property, real and personal, as may be devised, bequeathed, sold ... and from time to time may hold or invest, sell or dispose of any of its property".1978 Ga. Laws 3868, 3870. Section 1–104 of the Charter provides that "[t]he powers of this city shall

be construed liberally, in favor of the city. The specific mention or failure to mention particular powers shall not be construed as limiting in any way the powers of the city". *Id.* at 3871.

Debtor argues that the Lease provision results in violations of Sections 5–601, 5–602(4) and 5–604 of the Charter which govern ethical conduct of City officers and employees and prohibit conflicts of interest by which such individuals might benefit.[1] These sections regulate conduct and are found in Article V of the City Charter. Section 5–602(4) of the Charter regulates individual conduct with respect to conflicts of interest and prohibits elected and appointed officials and city employees from accepting any valuable gift from anyone which to the person's knowledge is interested in business dealing with the City. Section 5–604 regulates individual conduct and prevents officers or employees from using their positions to give special treatment to persons beyond that which is available to everyone. Section 5.6(c) of the Lease was not intended to promote unethical behavior or to require as its purpose

that city officers or employees violate the Charter. Rather, the Lease provision is intended to allow authorized representatives of the City and the lessee, subject to availability, to use Rounds only (1) to entertain sponsors of the Horse Park; (2) for promotional purposes; or (3) for other business purposes (collectively, the "Permissible Purposes"). If an elected or appointed official or employee of the City is not an authorized representative, he is not entitled to free Rounds under this section of the Lease. Similarly, if an authorized representative of the City requests free Rounds for any purpose other than a Permissible Purpose, the individual official or employee may be violating the Charter and debtor would not be required to provide free Rounds under Section 5.6(c) of the Lease. Any officer or employee of the City violating Section 5–602 or Section 5–604 would presumably be subject to penalties under Section 5–611 of the Charter.

 Debtor also asks the Court to relieve it of any obligation under Section 5.6(c) of the Lease, contending that it is very expensive for the debtor to comply

1. The Charter provisions provide as follows:
"Section 5–601. Declaration of policy. Elected and appointed officers and employees shall demonstrate by their example the highest standards of ethical conduct, to the end that the public may justifiably have trust and confidence in the integrity of government. They, as agents of public purpose, shall hold their offices or positions for the benefit of the public, shall recognize that the public interest is their primary concern, and shall faithfully discharge the duties of their offices regardless of personal considerations.

Section 5–602. Conflict of interest. No elected official, appointed officer, or employee of the city or any agency or political entity to which this charter applies shall knowingly: ...

(4) accept any valuable gift, whether in the form of service, loan, thing, or promise, from any person, firm or corporation which to the person's knowledge is inter-

ested, directly or indirectly, in any manner whatsoever in business dealing with the governmental body he or she is a member of or by which he or she is engaged; provided, however, an elected official who is a candidate for public office may accept campaign contributions and services in connection with any campaign;

"Section 5–604. Fair and equal treatment. No elected or appointed officer or employee shall use that official position to secure or grant special consideration, treatment, advantage, privilege or exemption to any person beyond that which is available to every other person." 1978 Ga. Laws 3868, 3888–89.

The penalties for a City officer or employee's violation of the Charter include being guilty of a misdemeanor, possible ineligibility for appointment or election, and possible probation or reprimand.

with this Section. The bankruptcy law on assumption of executory contracts is clear, and an executory contract may not be assumed in part and rejected in part. The debtor has assumed this Lease, and the Court cannot eliminate one section of the Lease to save the expense. 3 Collier on Bankruptcy 365.03[1] (Alan Resnick & Henry J. Sommer, eds. 15th ed. revised 2001); *see Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir.2007), *Byrd v. Gardinier, Inc. (In Re Gardinier, Inc.)*, 831 F.2d 974 (11th Cir.1987).

■■■■ As stated previously, neither party offered an interpretation of the meaning of Section 5.6(c) of the Lease or how it should work. Counsels' request that the Court "interpret" Section 5.6(c) is due to the difficulty the parties have had in implementing or administering this section. And that difficulty has arisen largely because the parties have not been able to agree who is an "authorized representative", when are Rounds available, and whether a Round is for a sponsor or a party with a business or promotional purpose. Debtor has not argued that Section 5.6(c) is unenforceable due to vagueness, and under Georgia law, a contract should not be declared unenforceable due to vagueness if it is possible to determine the reasonable intention of the parties given the circumstances of the contract. A contract need not state definitely and specifically all facts in detail to which the parties may be agreeing if the court can ascertain the terms and conditions on which the parties intended to bind themselves using proper rules of construction. *Sheppard v. Sheppard*, 229 Ga.App. 494, 494–95, 494 S.E.2d 240 (1997) (citing *Milton Frank Allen Publications, Inc. v. Ga. Ass'n of Petroleum Retailers*, 219 Ga. 665, 672, 135 S.E.2d 330 (1964)). A construction that upholds a contract in whole is preferred; interpretations rendering a provision law-ful are preferred to those that would render it unlawful and interpretations rendering a provision valid are preferred to those that would render it invalid. O.C.G.A. § 13–2–2(4); *see* 11 Samuel Williston & Richard A. Lord, Williston on Contracts § 32:11 (4th ed.2007).

■■■■ The reasonable intention of Section 5.6(c) is to allow the City and the Debtor to use Rounds when available for Permissible Purposes. In order to oblige the parties' request for a binding interpretation and in accordance with Georgia law, the Court will need to supply reasonable terms to clarify whether a given representative is authorized, whether Rounds are being used for proper purposes, and whether Rounds are available. Georgia law recognizes that on rare occasions a court can supplement a contract with implied terms "where it is reasonable and necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they deemed it unnecessary to state". *WirelessMD, Inc. v. Healthcare.com Corp.*, 271 Ga.App. 461, 464, 610 S.E.2d 352 (2005) (quoting *Fisher v. Toombs County Nursing Home*, 223 Ga.App. 842, 479 S.E.2d 180 (1996)); O.C.G.A. § 13–2–2(6). When supplying implied terms, courts will examine the facts and circumstances of each case, and supply reasonable terms that are not in conflict with any express terms of the contract. *See Myung Sung Presbyterian Church, Inc. v. North American Ass'n of Slavic Churches & Ministries, Inc.*, 291 Ga.App. 808, 662 S.E.2d 745 (2008) (holding trial court correctly implied a requirement for the landlord to apply for renewal of a zoning variance); *Townsend v. Lipman*, 277 Ga.App. 326, 626 S.E.2d 538 (2006) (court implied requirement that attorney communicate settlement offers); *Fisher v. Toombs County Nursing Home*, 223 Ga.App. 842, 479 S.E.2d 180 (1996)

(court implied requirement in a nursing home contract signed by the wife of the patient to give the wife notice of the patient's discharge); *see also Turner Entm't Co. v. Degeto Film,* 25 F.3d 1512 (11th Cir.1994) (discussing the concept of "gap filling" or "supplemental interpretation").

In order to "fill the gaps" to fulfill the purpose of Section 5.6(c) of the Lease, the Court has asked counsel to submit practical suggestions for workable procedures to implement Section 5.6(c), including the following:

(1) A procedure for providing the debtor with a written list of the authorized representative(s) of the City;

(2) A procedure clarifying when and how Rounds can be requested so as to better determine availability and avoid disputes; and

(3) A procedure whereby the City identifies individuals and entities to receive Rounds and the Permissible Purpose for which a Round is for requested.

It is clear that if the debtor declines the use of Rounds requested by a City employee or official who is not an authorized representative of the City, then there is no default under the Lease, If the debtor declines the use of Rounds due to the unavailability of Rounds, there is no default under the Lease. If the City requests the use of Rounds but declines to identify the sponsor or business or promotional purpose for which the request is made and the debtor declines the use of Rounds, there is no default under the Lease. The Court has suggested that a form be developed that an authorized representative of the City could use which would provide the debtor with the information necessary to evaluate the request in light of the requirements of Section 5.6(c). After receiving any practical suggestions from counsel, the Court will be better informed and able to provide a procedure that allows for the practical interpretation of Section 5.6(c) of the Lease.

IT IS SO ORDERED.