40213. DEARHART v. RESERVE INSURANCE COMPANY.

DECIDED SEPTEMBER 4, 1963—REHEARING DENIED
SEPTEMBER 19, 1963.

348

*Wheeler & Crecelius, Charles D. Wheeler, B. W. Crecelius,* for plaintiff in error.

*Nall, Miller, Cadenhead & Dennis, Edward S. White,* contra.

NICHOLS, Presiding Judge. 1. Under the decision of the Supreme Court in *St. Paul Fire &c. Ins. Co. v. Johnson,* 216 Ga. 437 (117 SE2d 459), the trial court properly overruled the general demurrers of the defendant Dearhart. No error is assigned on the judgment overruling special demurrers.

2. The case was tried by the trial court without the intervention of a jury and from the bill of exceptions it appears that five exhibits were introduced in evidence and since the parties agreed the facts were not in dispute, the trial court was authorized to consider two exhibits to the answer of the defendant Rauschenberg for, after describing the five exhibits attached to the bill of exceptions, and which were introduced on the trial of the case, the bill of exceptions states: "Also pertinent to the issues herein are exhibits A & B attached to the answer of the defendant Rauschenberg."

It appears without question that the following are the facts leading up to the present controversy. The defendant Rauschenberg owned no automobile but needed a policy of liability insurance in order to regain his operator's license which had been revoked by the Georgia Department of Public Safety, that the policy of insurance in dispute was issued and a form SR-22 furnished by the insurer to the Department of Public Safety, that the policy of insurance was issued to cover a Ford automobile owned by Rauschenberg's father, and that on November

3, 1961, the defendant Rauschenberg purchased a Chevrolet automobile and on November 19, 1961, the collision out of which the controversy arose occurred.

Much of the argument contained in the briefs relates to the "intent" of the driver responsibility law (*Code Ann. Ch.* 92A-6), but it is deemed unnecessary to consider such issue for a proper decision of the case.

The policy of insurance issued to Rauschenberg provides in part: "1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." "4. Newly acquired automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date. . ."

Since the "insured" Ford automobile was not owned by Rauschenberg it is obvious that the Chevrolet did not "replace" such Ford and no coverage was provided by this provision of the policy. The second provision which provides for automatic coverage presents a somewhat more difficult question for an interpretation of this language which provides coverage where "the company insures all automobiles owned by the named insured . . . on the date of its delivery" is necessary.

It has been consistently held that such language applies equally to a policy covering one automobile as to policies covering a "fleet" of vehicles. See Horace Mann Mut. Cas. Co. v. Bell, 134. FSupp. 307, and the cases there cited. See also Couch on Insurance, Vol. 5, 1963 Pocket Supplement, p. 128 et seq., § 1175 c 2, "Additional" and "Substituted" Vehicles; Automatic coverage on acquisition of other automobiles.

No case has been cited by counsel and only one has been found

by this court wherein the language has been discussed where the original policy was issued to an insured who did not own the "named automobile." This case, Robinson v. Georgia Cas. &c. Co., 235 S.C. 178 (110 SE2d 255), while not on "all fours" with the case sub judice yet has some striking parallels. There, as here, the insured's driver's license had been revoked and he needed a policy of liability insurance in order to regain his operator's license and again, there as here, he purchased a policy of insurance and the "named automobile" in the policy was owned by the insured's father. In that case the father traded automobiles and the wreck out of which the action arose occurred while a driver was operating the "new" automobile with permission of the son. The decision holds that no coverage existed on the son's policy because the "new" automobile was not a replaced automobile for one the son owned nor was it a newly acquired automobile by him. However, it was there held: "Had he [the named insured who owned no automobile at the time the policy was issued] purchased an automobile, the protection of the policy would have extended to the newly acquired automobile under the provisions of insuring agreement 4." The language quoted from the policy is identical with the language used in the policy in the case sub judice. Such clause is for the benefit of the insured. It is to provide coverage on a newly acquired automobile at the earliest possible moment after it is acquired when the insured has owned no automobile not insured by the insurer. See Michel v. Aetna Cas. &c. Co., 252 F2d 40, and citations.

The policy of insurance in the case sub judice covered the automobile being driven by the insured when the wreck occurred and the trial court erred in rendering a declaratory judgment which held that no coverage existed.

*Judgment reversed. Frankum and Jordan, JJ., concur.*