453 P.2d 239

**RESERVE INSURANCE COMPANY,**
Appellant,

**v.**

Robert E. STAATS, Surviving Parent of Roberta Staats, Deceased; and Norma J. Staats, Surviving Parent of Roberta Staats, Deceased, Appellees.

No. 2 CA–CIV 639.

Court of Appeals of Arizona.

April 10, 1969.

Rehearing Denied May 6, 1969.

Review Denied June 3, 1969.

May, Dees & Newell, by Paul F. Newell, Tucson, for appellant.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellee Norma J. Staats.

MOLLOY, Chief Judge.

This case involves construction of an "operator's" or "non-owner" policy of automobile liability insurance. The plaintiff-appellant insurer in this declaratory judgment proceeding issued such a policy to its insured, who at a later time purchased an automobile for himself, in which appellees' daughter, a passenger, was killed while driving with the insured. We must determine, primarily, whether the bodily injury liability provisions of the policy afford coverage for an accident caused by the insured while driving an automobile owned by him. A second question, which arises in the event there is determined to be no bodily injury liability coverage, concerns the availability of uninsured motorist coverage.

The facts may be stated briefly. On January 17, 1966, the plaintiff-insurer issued a one-year "non-owner" policy of automobile insurance to James Wesley Walters. The policy is characterized as "non-owner" by reason of an endorsement, the pertinent portions of which will be hereinafter set forth. On or shortly before April 1, 1966, Walters contracted to purchase and took delivery of a new Lotus sports car. Title to the car was issued to Walters in his name on April 12, 1966. The insurance agency which issued the policy to Walters became aware from another source that Walters had purchased the car, and on April 22, 1966, it wrote a letter to him stating that his policy did not afford coverage for an automobile owned by him.

It is not suggested that Walters had been previously advised otherwise, and Walters himself later stated that " * * * it was my idea that I was not covered for an owned automobile—just non-owned cars." Walters was driving his newly acquired Lotus automobile on April 23, 1966, when with Roberta Staats as his passenger, he overturned in a single-car accident. Roberta Staats died as the result of injuries she received in this accident. Her parents, appellees here, have commenced a wrongful death action against Walters in the superior court.

■■ Motor vehicle liability policies issuable in Arizona under A.R.S. § 28–1170, as amended, of the Safety Responsibility Act fall into two general categories: an "owner's policy" and an "operator's policy." See Connolly v. Great Basin Insurance Company, 6 Ariz.App. 280, 288, 431 P.2d 921, 929 (1967). The essential distinction between the two types of policies is set forth in a passage from an annotation on the subject of operator's policies in 88 A.L.R.2d 995, 997–98, quoted in the *Connolly* case at 6 Ariz.App. 287–288, 431 P.2d 928–929. In utmost brevity, an owner's policy insures the owner of a specified vehicle or vehicles against liability arising out of their use, while an operator's policy insures the person in the act of operating. With the exception of Maryland, however, where the statute governing operators' policies requires coverage while the insured is operating "any motor vehicle," statutes providing for the issuance of operators' policies require coverage for the insured operator *except* when he is driving a vehicle owned by him. See 88 A.L.R.2d 998–1007. Thus, A.R.S. § 28–1170, subsec. C provides:

> "The operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle *not owned by him,* within the same territorial limits and subject to the same limits of liability as set forth in subsection B of this section with respect to an owner's policy of liability insurance." (Emphasis added)

While many of the standard insuring provisions of the policy involved in this case are phrased in the language of an owner's policy, there is no contention by appellees that the policy issued by appellant to Walters is not an operator's policy. The character of the policy is indicated on its first page, styled "DECLARATIONS," under Item 5, which calls for a "Description of the automobile * * *" The typewritten term "N)N-OWNERSHIP" [*sic*] is placed in the otherwise blank spaces on the printed form provided for information about "CAR

1" and "CAR 2." The non-ownership endorsement to the policy, appearing in the record as the second page of the policy, is entitled "NON-OWNER POLICY," and contains the following language:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage Liability and for Automobile Medical Payments applies with respect to the use of any automobile by or on behalf of the named insured or his spouse if a resident of the same household, subject to the following provisions:

   \*     \*     \*     \*     \*     \*

"2. The insurance does not apply:
"(a) to any automobile owned by the named insured \* \* \*"

Appellees' assertion of appellant's liability under the bodily injury coverage of the policy is grounded upon the "Newly Acquired Automobile" clause. That clause, long a familiar feature in an owner's policy, *see* Annot., 34 A.L.R.2d 936, reads in the present policy as follows:

"(4) Newy Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, *if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured* and such spouse on the date of its delivery; and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under coverages A, B and division 1 of coverage C if the newly acquired automobile replaces an owned automobile covered by this policy. \* \* \* The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile." (Emphasis added)

This clause appears several paragraphs below a caption which includes the words "Automatic Insurance."

Appellees' theory of coverage is set forth in their brief, in the following terms:

"The theory of coverage is that the policy by its very terms provides 'automatic' coverage for thirty days for 'newly acquired automobiles.' This language is standard to most policies. Logically, it should *not* be standard to an 'operator's' policy. But it *is there*."

Appellees at another point state that the newly acquired automobile clause should be construed to "mean something."

■ There can be no quarrel with the general proposition that an interpretation which gives effective meaning to all of the provisions of a contract is to be preferred to an interpretation which leaves a part of the contract ineffective. Tyson v. Tyson, 61 Ariz. 329, 339, 149 P.2d 674, 678–679 (1944). We also agree with appellees that, in determining whether ambiguity exists in an insurance policy, its language must be considered from the standpoint of the average layman, untrained in law or insurance. Droz v. Paul Revere Life Insurance Company, 1 Ariz.App. 581, 583, 405 P.2d 833, 835 (1965). But we fail to see that application of these or any other principles urged by appellees lead to the conclusion that the clause in question gives rise to a liability-creating ambiguity.

■ The intention of the parties to an insurance contract is controlling, D. M. A. F. B. Fed. Cr. U. v. Employers Mut. L. Ins. Co. of Wis., 96 Ariz. 399, 402, 396 P.2d 20, 22–23 (1964), and all of the policy, including the endorsement, must be read as a whole. Droz v. Paul Revere Life Insurance Company, *supra*. "In so far \* \* \* as a rider or indorsement modifies, qualifies, or restricts the terms of the original policy, the rider or indorsement controls." 1 Couch on Insurance 2d, § 15.30, at 701; and *see*, to the same effect, Lax v. Fidelity and Casualty Company of New York, 74 N.M. 123, 391 P.2d 411, 413 (1964), and McConnell v. Underwriters at Lloyds of London, 56 Cal.2d 637, 16 Cal. Rptr. 362, 364, 365 P.2d 418, 420 (1961).

A clearly worded endorsement provides that this policy does not apply to " \* \* \* *any* automobile owned by the named insured

* * *" (Emphasis added.) While we see little to be commended in the insurer's practice of "doctoring up" an owner's policy to make it an operator's policy, there is absolutely no evidence of any uncertainty in the minds of the parties to the contract as to the kind of insurance that was being issued. The insured Walters sought, bought, and paid for an operator's policy, which he knew did not include coverage for an owned automobile. That Reserve intended no coverage for owned automobiles is equally clear. Appellees' decedent was a stranger to this contract and has shown no equities that would require altering the contract between the parties for her benefit. The statute plainly permits the issuance of a policy which would provide no coverage to her under these circumstances, and with the legislative wisdom of that statute we are not concerned.

■ The terms of the policy are not rendered ambiguous by the "Newly Acquired Automobile" provisions; these provisions are simply *inapplicable*, since the stated prerequisite for coverage, the insured's ownership of an automobile or automobiles insured under the policy, is not met.

Both appellant and appellees seem to agree that the case of Reserve Insurance Company v. Dearhart, 219 Ga. 699, 135 S.E.2d 378 (1964), is closest in point on the question before us. In that case the Supreme Court of Georgia held, reversing a decision of the Court of Appeals, reported at 108 Ga.App. 347, 132 S.E.2d 809, that a newly acquired automobile clause was not ambiguous and did not afford coverage where the insured had not previously owned an automobile. We do not agree with appellees that the reasoning of the intermediate appellate court is to be preferred to that of the Supreme Court. We are not aware of any decision which is contrary to the conclusion we reach. Except in Maryland, *see supra,* the cases appear unanimous in denying coverage where the insured under an operator's policy is driving an automobile owned by him. *See* § 3 of the Annot., at 88 A.L.R.2d 995, 999 et seq.

There remains the question of whether appellees' loss is covered by the uninsured motorist provisions of the policy.

■ We have stated that our uninsured motorist statute, A.R.S. § 20–259.01, is a strongly worded statutory mandate, to be liberally construed in accordance with its remedial purposes. *See* Geyer v. Reserve Insurance Company, 8 Ariz.App. 464, 447 P.2d 556, 559 (1968), and cases cited therein. We are not at liberty, however, to find uninsured motorist coverage where it is neither provided in the policy under consideration nor demanded by statute.

The insuring agreement under the "Family Protection" or uninsured motorist coverage provides as follows:

"Damages for Bodily Injury Caused by Uninsured Automobiles: The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *"

"Insured" is defined, in pertinent part, as follows:

"(a) 'insured' means:

"(1) the named insured * * *

"(2) *any other person while occupying an insured automobile;* * * *
"* * *"

(Emphasis added)

An "insured automobile" is pertinently defined in these terms:

"(b) 'insured automobile' means an automobile:

* * * * * *

"(3) while being operated by a named insured * * *

**414**

"but the term 'insured automobile' shall *not* include:

\* \* \* \* \* \*

"(iii) under subparagraphs (2) and (3) above, *an automobile owned by the principal named insured* \* \* \*"

(Emphasis added)

While Roberta Staats would have been classified as an insured if Walters had been driving a non-owned car, pursuant to provisions (a) (2) and (b) (3) set forth above, she has no status as an insured by application of provision (b) (iii), since at the time of the accident Walters was driving his own car. We note parenthetically that pursuant to other provisions of the coverage which are not set forth, Roberta Staats would have met the definition of an insured if the car in which she was driving had been a described insured automobile under an owner's policy, as apparently recognized by the stipulation of counsel in Geyer v. Reserve Insurance Company, *supra.*

Counsel for appellees has not called our attention to any statute which would require the insurer to cover a person in the position of Roberta Staats under the facts of this case, and our own research has not revealed any. Counsel cites Bowsher v. State Farm Fire and Casualty Company, 244 Or. 549, 419 P.2d 606 (1966), but while that case contains some language favorable to appellees' position, the plaintiff there was unquestionably an insured within the terms of the policy, and the only question was whether his own car was insured or uninsured with respect to him. In this case, there is no question but that Walters' car was uninsured with respect to Roberta Staats, but she is not within the group of persons entitled to the uninsured motorist coverage.

We find no other basis for sustaining the judgment of the trial court, and it must, accordingly, be reversed.

Reversed with instructions to enter judgment for appellant.

HATHAWAY and KRUCKER, JJ., concur.