464 P.2d 987

Florence Mary **KOENIG**, Individually, and as Personal Representative of Patricia Koenig, Deceased, Appellant,

v.

**MISSION INSURANCE COMPANY,** Appellee.

No. 1 CA–CIV 820.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 11, 1970.

Rehearing Denied Feb. 24, 1970.

Review Granted March 24, 1970.

T. Gale Dake, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Thomas A. McGuire, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

This is an appeal from summary judgment entered against the defendant Koenig, finding that at the time of her death Patricia Koenig was not covered by uninsured motorist insurance even though the face of the policy as issued by the plaintiff Mission Insurance Company indicated otherwise. We disagree.

The relevant facts are not in dispute and reveal the following:

In late August or early September 1966 the mother of nineteen-year-old Patricia Koenig, Florence Mary Koenig, telephoned Mr. Smith at Haldiman Brothers Insurance Agency in Phoenix, Arizona, and requested that he stop by her house to discuss automobile insurance with her daughter. The meeting was arranged at which Smith explained the various types of coverage available, along with their costs, and recommended Mission Insurance Company, one of the companies for which his general agency solicited insurance. No insurance was applied for at this time, but in early October 1966 Patricia called Smith to apply for a policy. Over the telephone Smith again explained the various coverages and their costs, and as Miss Koenig would express the types of coverage she desired (not including uninsured motorist) he penciled out a rough copy of an application. On the back of his rough copy he computed the total premium as $227.00, and, after adding finance charges, told Miss Koenig that her monthly payment over a six-months' period would be $39.28 per month.

An application form was then prepared by Haldiman Brothers and mailed to Miss Koenig along with a letter requesting that she read the application and sign it on the two spaces indicated for signature. The application did not include uninsured motorist coverage, and on the back there was a clause specifically waiving uninsured motorist coverage to comply with A.R.S. § 20–259.01.

On October 10, 1966 Miss Koenig signed the application and the waiver, then mailed it to Haldiman Brothers where it in turn was sent to the Mission home office. Mission issued the policy on October 14, 1966. However, the policy as issued not only contained the coverage applied for, but also, through clerical error, uninsured motorist coverage. It itemized the various charges, including a $12.00 fee for uninsured motorist coverage, for a total premium of $239.00.

Upon receiving the policy Mr. Smith read it, found that it mistakenly contained the additional coverage, but fearing that it would confuse Miss Koenig if he attempted to explain what happened, merely forwarded the policy to her. In his deposition Mr. Smith further explained that he mailed the policy even though he knew it was in error "in order to give evidence of insurance." Along with the policy a billing invoice for $239.00 was sent, upon which was written "premium financed", and a letter stating:

"The policy that you authorized our office to write is enclosed.

"We also have received the first payment under the policy for $39.28.

"The financing arrangement allows six equal payments due on the first of the month which then pays the policy for the full one year. In your case this means that another payment of $39.28 is due now with four additional payments due on the first of December, January, February and March of $39.28. Then the policy is paid for until next October. Because it is now the 4th of November, would you please send the second payment by return mail."

That same day Mr. Smith sent a letter to Mission Insurance requesting that the uninsured motorist coverage be deleted from the policy. However, the uninsured motorist coverage was not canceled by Mission until November 15, 1966, two days after Miss Koenig was killed in an automobile accident on November 13, 1966, and of course was never conveyed to her.

We find no Arizona case law which controls the issue at bar, but note that the facts in Utah Home Fire Insurance Company v. McCarty, 266 Cal.App.2d 892, 72 Cal.Rptr. 460 (1968) are closely analogous and believe its holding is based on sound reasoning.

In the Utah Home Fire case the insured had signed a waiver of uninsured motorist coverage at the time of making application for automobile liability insurance, but thereafter, through clerical error, the ap-

plication was processed entirely as though it did not contain the waiver, and the policy was mailed to the insured with uninsured motorist coverage included. The California Court of Appeals held that the insured would at best be a very puzzled man if he attempted to figure out if he did or did not have uninsured motorist coverage, and that California's strong public policy favoring the coverage would override the necessity of a procrustean attempt to fit the party's acts into a contract through tortured hornbook law.

In the instant case, when Miss Koenig received her policy a series of factors came into play which at best would have totally confused her if she attempted to decide whether she was covered by the uninsured motorist clause. To begin with, the policy recited that uninsured motorist coverage was issued to her and that it was included in the total premium of $239.00. Second, agent Smith's letter referred to this policy as "the policy you authorized our office to write * * *". The invoice showed that Mission billed her for the coverage but that the $239.00 premium was financed by Haldiman Brothers. Then Smith's letter explained that they had received the first payment of $39.28 on "the policy" and that the financing arrangement called for five more payments "which then pays the policy for the full one year." Finally, the application waiving the coverage was not attached to the policy and Smith's letter made no reference to any mistake, but to the contrary manifested in every way that the insurance company intended to issue the coverage and that the $39.28 payment was based on a total premium of $239.00.

Unfortunately, when Miss Koenig suffered her fatal accident we lost the opportunity of learning whether she relied upon the face of the policy which at least indicated that she had uninsured motorist coverage.

It might have been the case that Miss Koenig remembered the terms and amount of the coverage applied for and realized there was a clerical error. Or, she might have read the policy and letter, believed it to be a valid contract, and relied on its coverage by failing to thereafter apply for uninsured motorist coverage. As a layman, she could not be expected to have realized that the waiver might still be in effect at the time the policy was issued.

Just as in the Utah Home Fire Insurance case, supra, we do not imply that the clerical error alone would entitle the insured to the coverage mistakenly issued. We merely point out that Arizona has a strong public policy requiring automobile liability insurance policies to include uninsured motorist coverage unless there is a valid rejection of such coverage in existence at the time the policy is issued [A.R.S. § 20–259.01; Maryland Casualty Company v. Wilson, 6 Ariz.App. 470, 433 P.2d 650 (1967); Reserve Insurance Company v. Staats, 9 Ariz.App. 410, 453 P.2d 239 (1966)] and hold that this public policy will not permit Mission to deny that Miss Koenig's policy contained the statutorily required uninsured motorist coverage where they have failed to clearly show that Miss Koenig understood she had a valid rejection in existence at the time the contract was complete and the policy issued.

Reversed.

CAMERON, J., concurs.

STEVENS, Judge (dissenting).

I regret that I cannot agree with the majority. It appears to me that the intent of both parties was clear, that is, that the policy would be issued excluding the "uninsured motorist coverage". A policy of insurance comes into being after an offer and negotiations together with an acceptance by separate documents. The policyholder does not read and sign the policy before it becomes effective as is the situation with the usual written contract. In my opinion it therefore becomes important to examine the negotiations leading up to the issuance of the policy, as well as the policy itself. The record does not disclose that the insured relied upon the face of the

policy and that in her reliance thereon she changed her position.

Is the policy severable as to coverage and as to consideration? In my opinion it is. There are six headings on the face of the policy describing the various types of coverage which are available under the policy. Under each of the six headings there is a space for the insertion of the premium charge for that particular coverage. On the face of the policy the column headed "automobile medical payments" is blank as to the premium charge. There are five headings, each of which shows a specific premium charge. One of these hearings is captioned "uninsured motorists" and under that heading the premium is shown to be $12.00. The insured contracted for four separate areas of coverage and the sum total of the premiums specified for each of these areas of coverage totals the agreed contract sum of $227.00. The negotiations and the agreements of the parties expressly negated uninsured motorist coverage. The insurer did not have an enforceable contract by which it could have collected a premium for the uninsured motorist coverage.

In my opinion contracts which are severable are to be construed in the light of the intent of the parties and the consideration. In my opinion, the following cases support this conclusion: Leeker v. Marcotte, 41 Ariz. 118, 15 P.2d 969 (1932); Waddell v. White, 51 Ariz. 526, 78 P.2d 490 (1938); Madrigal v. Industrial Commission, 69 Ariz. 138, 210 P.2d 967 (1949); Lumbermen's Ins. Co. v. Heiner, 74 Ariz. 152, 245 P.2d 415 (1952); Kahl v. Winfrey, 81 Ariz. 199, 303 P.2d 526 (1956); D. M. A. F. B. Federal Credit Union v. Employers Mutual Liability Insurance Company of Wisconsin, 96 Ariz. 399, 396 P.2d 20 (1964); and O'Malley Investment and Realty Company v. Trimble, 5 Ariz.App. 10, 422 P.2d 740 (1967).

I recognize the strong public policy in favor of uninsured motorist coverage, a policy expressed by A.R.S. § 20-259.01.

This section, referring to uninsured motorist coverage, states:

"This coverage shall at the time the policy is issued be called to the attention of the named insured who shall have the right to reject such coverage."

In my opinion the insured expressly negated this coverage at the time the financial arrangements for her insurance were concluded and it was not necessary for the agent to again call this to her attention at the time of the delivery of the policy.

I would affirm.