### 46693. LaSALLE NATIONAL INSURANCE COMPANY
### v. POPHAM et al.

ARGUED NOVEMBER 1, 1971—DECIDED MARCH 17, 1972.

*Swift, Currie, McGhee & Hiers, W. Wray Eckl, Hunter S. Allen, Jr.,* for appellant.

*Jones, Bird & Howell, Arthur Howell, III, Peyton S. Hawes, Jr., Henning, Chambers & Mabry, Ward D. Hull,* for appellees.

EBERHARDT, Judge. ■ The first issue raised involves the question as to whether this was a proper case for declaratory judgment, it being contended that since the insurer was already a party to the main suits by virtue of the third-party complaint filed by the insured the issues could be adjudicated in those actions, that all rights of the in-

surer had accrued when the declaratory judgment action was filed, that the petition fails to disclose any uncertainty as to what action LaSalle should take, and that the judgment would be an advisory judgment only. We do not agree.

The rule as to when an insurer may properly proceed for declaratory judgment is clearly stated in *Nationwide Mut. Ins. Co. v. Peek,* 112 Ga. App. 260 (145 SE2d 50): "Where an insurer denies coverage under a particular policy and seeks to relieve itself of its obligation to defend a pending suit against an insured because of circumstances pleaded which cast doubt on the coverage of the policy as applied to those circumstances, there is such an immediacy of choice imposed upon it as to justify an adjudication by declaratory judgment."

A similar holding was made in *St. Paul Fire &c. Ins. Co. v. Johnson,* 216 Ga. 437, 438 (117 SE2d 459), where it was pointed out that "This presents not a remote or contingent future possibility of dispute but a real and imminent threat facing the insurance company. In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U. S. 270, 273 (61 SC 510, 85 LE 826), in determining whether there exists a controversy within the meaning of the Federal Declaratory Judgment Act, which is similar to ours, the court stated: 'Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. See Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 239-242 (81 LE 617, 620-622, 57 SC 461, 108 ALR 1000).'" Accord: *Mensinger v. Standard Acc. Ins. Co.,* 202 Ga. 258 (42 SE2d 628); *Ga. Cas. &c. Co. v. Turner,* 86 Ga. App. 418 (71 SE2d 773); *Parks v. Jones,* 88 Ga. App. 188 (76 SE2d 449); *Griffin v. Hardware Mut. Ins. Co.,* 93 Ga. App. 801 (92 SE2d 871); *Buffington v. New Hampshire Fire Ins. Co.,* 104 Ga. App. 139 (121 SE2d 270); *Dearhart v. Reserve Ins. Co.,* 108 Ga. App. 347 (132 SE2d 809), reversed on other grounds in 219 Ga. 699 (135 SE2d

378); *Mock v. Darby,* 109 Ga. App. 620 (137 SE2d 81); *Ditmyer v. American Liberty Ins. Co.,* 117 Ga. App. 512 (160 SE2d 844); *Stubbs v. State Farm Mut. &c. Ins. Co.,* 120 Ga. App. 750 (172 SE2d 441).

Professor Borchard, who drafted the Federal Declaratory Judgment Act, after which the various State Acts, including ours, is patterned, says that "cases which have attracted most attention to the declaratory judgment are those in which a casualty company institutes an action against the insured, joining or not joining the injured parties, for a declaration that the company is not under a duty to defend or to pay any eventual judgment, because the injury or death is not within the coverage of the policy or because the company has some defense which exempts it." He asserts as some of the reasons why the action is appropriate when there is a bona fide dispute as to coverage. "By refusing to defend, the company loses all opportunity to contest the negligence of the insured or the injured person's right to recover, and exposes itself to a charge of and penalty for breach of contract. By defending, it incurs considerable expense and may waive the claim of immunity. It is therefore of exceptional importance to both insurer and insured, if not indeed to the injured person, to know at the earliest possible moment whether the policy covers the loss or not. The liability under the policy and the liability for negligence are indeed two separate transactions." Borchard, Declaratory Judgments (2d Ed.) pp. 646, 652.

We do not regard the cases of *Rowan v. Herring,* 214 Ga. 370 (105 SE2d 29), where it was held that after the testator's death the rights of legatees and devisees had accrued under the will and thus there was no necessity for a declaration of those rights, or *Pinkard v. Mendel,* 216 Ga. 487 (117 SE2d 336), also seeking a declaration of rights under the will of a deceased testator, or *Dunn v. Campbell,* 219 Ga. 412 (134 SE2d 20), seeking a declaration of rights where in a simple statutory action an assessment made under provisions of a statute was sought to be recovered, or *State Hwy. Dept. v. Ga. Southern &c. Co.,* 216 Ga. 547 (117

SE2d 897), involving a dispute as to land titles, to be conflicting with *St. Paul Fire & Marine Ins. Co. v. Johnson,* 216 Ga. 437, supra, or with *Nationwide Mut. Ins. Co. v. Peek,* 112 Ga. App. 260, supra. The factual situations as well as the legal positions of the parties are altogether different and it is recognized that in the wills and statute cases a declaratory judgment is not needed, since it would be advisory only, while in cases like *St. Paul Fire & Marine* and *Nationwide Mutual* and many others cited, as well as the case here, a declaratory judgment is essential to the plaintiff who seeks it for determining a future course of action, i.e., whether it must afford a defense.

In the same category of the wills cases is *Holcomb v. Bivens,* 103 Ga. App. 86 (118 SE2d 840), where two attorneys sought a determination as to the priority of liens—which is controlled by statute. Nor do we find conflict in *Gant v. State Farm Mut. Auto. Ins. Co.,* 109 Ga. App. 41 (134 SE2d 886), where there was a claim of no coverage because the operator of the vehicle and the injured had been fellow servants, or *Travelers Indem. Co. v. Hood,* 110 Ga. App. 855 (140 SE2d 68, 20 ALR3d 314) and *Lumbermen's Mut. Cas. Co. v. Moody,* 116 Ga. App. 2 (156 SE2d 117), where a judgment had already been obtained against the insured in a negligence action. There may be others in which it has appeared that the rights of the parties had already accrued. We do not see any conflict between them and what we hold here, for the situations are vastly different. LaSalle must know whether it is to be held to have extended coverage under its policy under the facts and circumstances and in the light of the policy language before it can know whether it must afford a defense.

If there are cases from this court which can be construed to conflict with our present ruling, they are, to that extent, disapproved.

■ Was the Dodge a substitute automobile for the Ford Falcon so that it might have been covered under the La-Salle policy, or was it a substitute for the Chevrolet and thus within the coverage of the Indiana Lumberman's policy up to the time of its cancellation?

First, let us consider the policy language. It is specifically provided that for the newly acquired car to be within the shelter of coverage it must "replace an automobile owned by [the insured or his spouse] and is covered by this policy."

The Ford Falcon was owned by Popham and it was covered by the LaSalle policy.

It is required that the insured notify the company within 30 days after acquisition of the new car. Popham contends that he did notify LaSalle.

It is required that the newly acquired automobile "replace an owned automobile covered by this policy . . ."

Here is the crux of the matter. The Ford Falcon was not traded to City Dodge when the newly acquired car was obtained from them; the Chevrolet was traded in on the purchase of the Dodge. The Ford Falcon was returned May 4, 1968, by Popham to his half-brother, from whom he had originally obtained it. He did not have it when the Dodge was finally acquired May 6, 1968.

Neither this court nor the Supreme Court has heretofore dealt with this newly acquired vehicle provision of a liability policy in the context of these facts, but there are other jurisdictions which have done so and we here adopt the view of what appears to be the majority of the jurisdictions.

The identical policy provision was under consideration under similar facts in Dike v. American Family Mut. Ins. Co., 284 Minn. 412, 416 (170 NW2d 563), where it was held: "Construction of this provision is a matter of first impression in this state, but it has been construed in varying factual contexts in a number of other jurisdictions. With only two exceptions, every court which has considered this provision has held that it is not ambiguous and that in order to be 'newly acquired' within its plain meaning, an automobile must have been acquired after the commencement of the policy period and must replace the automobile described in the policy. E.g., Lynam v. Employers' Liab. Assur. Corp. (D. Del.) 218 FSupp. 383, affirmed (3 Cir.) 331 F2d 757; Commercial Standard Ins. Co. v. Central Produce Co., (M. D. Tenn.) 42 FSupp. 31 . . . Coleman v. Atlantic

Nat. Ins. Co., (Fla. App.) 166 S2d 620; Country Mut. Ins. Co. v. Murray, 97 Ill. App. 2d 61 (239 NE2d 498); Howe v. Crumley, Jones & Crumley Co., 44 Ohio L. Abs. 115 (57 NE2d 415); Brown v. State Farm Mut. Auto. Ins. Co. (Ky. App.), 306 SW2d 836; Marquez v. Dairyland Mut. Ins. Co., 78 N. M. 269 (430 P2d 766); State Farm Mut. Auto. Ins. Co. v. Shaffer, 250 N. C. 45 (108 SE2d 49); Utilities Ins. Co. v. Wilson, 207 Okla. 574 (251 P2d 175). . .

"It is fundamental that ambiguous insurance policy provisions must be construed in favor of the insured. However, we cannot so construe a policy contrary to its plain, unequivocal language. We believe that plaintiff's policy plainly requires that an automobile be acquired as a replacement for the automobile described in the policy in order for [the replacement provision] to apply . . .

"Thus, consistent with its language and purpose, it is our opinion that the 'newly acquired' provision must be interpreted under the undisputed facts of this case, as affording coverage only to an automobile acquired as a replacement and actually substituted for the automobile described in the policy."

A similar holding is found in Lambert v. Alabama Farm Bureau Mut. Cas. Ins. Co., 281 Ala. 196, 198 (200 S2d 656), and the court cites with approval Appleman's Insurance Law & Practice, § 4293, where it is said that: "The coverage extends to the new acquisition when it replaces the sole automobile owned by the insured, when the insured owns a number of vehicles and all of them are insured with the company, or when several of the vehicles owned by the insured are covered by the policy and the new acquisition replaces one already covered. It does not apply to new vehicles which are in addition to those insured by the former coverages and which are not used as replacements, unless all vehicles of that insured are covered, in which event it is contemplated that a premium re-adjustment will be made."

Appellee, Popham, contends that while the Dodge may not have technically replaced the Ford Falcon, it was his intention that it do so, pointing out that whereas he had

previously kept two automobiles, after the acquisition of the Dodge he kept it alone, and that he had notified Indiana Lumberman's Casualty to cancel the coverage which he had carried on the Chevrolet.

While there is authority to the contrary, we believe the better view is found in Auto Lease Co. v. Central Mutual Ins. Co., 7 Utah 2d 336 (325 P2d 264) where a similar contention was made. The plaintiff urged that a reasonable interpretation of the policy provision is that a newly purchased automobile is covered from the date of purchase if it is intended to replace an automobile covered by the policy. The court held (p. 339) that the language of this provision is without ambiguity and asserted: "The test to be applied is: would the meaning be plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstances, including the purpose of the policy. If so, the special rule of construction is obviously unnecessary. An analysis of the language in question reveals that the meaning the plaintiff seeks to glean therefrom amounts to a distortion from the literal meaning of the present indicative of the emphasized verb: 'If it *replaces* an automobile' (which usually indicates a fact accomplished), to the future tense, which literally would require the interpolation of the emphasized words, 'If it is *intended to replace* an automobile.' . . . The true meaning of the clause in question is better understood if we insert the word 'actually' before the questioned verb 'replaces.' It would then read: 'If it [actually] replaces an automobile described in the policy.' So read it seems clear that it means that the new car must be put in service, and take the place of one of the cars described in the policy before it becomes insured." With this construction of the provision we agree, and conclude that under the policy terms the Dodge did not replace the Ford Falcon, but replaced the Chevrolet which was traded in for the Dodge.

■ Does the SR-22 filing made by LaSalle extend coverage to the Dodge?

Reliance is had upon the case of *Davis v. Reserve Ins. Co.,* 220 Ga. 335 (138 SE2d 657), where one who had no vehicle himself, needed a driver's license to enable him to pursue his job as a truck driver. His driver's license had been revoked by the Department of Public Safety and, in order to get it reinstated, he procured an SR-22 filing by Reserve Insurance Company, in connection with which it issued to him a policy carrying a nonowner's endorsement. The policy provided that it would not apply when he was operating an automobile as a livery unless the use was specifically declared in the policy, which it was not. On the policy Davis was listed as a "truck driver." He was involved in an accident while operating a truck of his employer, and the question before the court was whether the policy exclusion applied, relieving coverage in the situation.

The Supreme Court (with two judges dissenting) reversed this court (*Reserve Ins. Co. v. Davis,* 109 Ga. App. 535 (136 SE2d 469) and held (p. 338): "The defendant in error has certified to the Department of Public Safety that the insured has a policy which provides him with automobile liability insurance *while operating a motor vehicle* and the Department of Public Safety, in reliance on this certificate, has reinstated the insured's driver's license. Having made it possible for the insured to return to the highways by certifying that the general public is afforded certain protection, the defendant in error is in no position to deny, at a later date, the existence of this protection and thereby thwart the purpose of the Georgia Motor Vehicle Safety Responsibility Law."

There are substantial differences in the situation here and in *Davis.* In *Davis* the insurance company certified to the Department that it had issued to Davis a policy which covered him *while operating a motor vehicle,* language which appears to have been all inclusive. Here, LaSalle filed with the Department of Public Safety a certificate that it had issued to Popham an *owner's policy covering his operation of the Ford Falcon.* In *Davis* the policy was issued with a nonowner's endorsement, which authorized him to

drive vehicles that he did not own, and which was necessary if he were to continue on his job as a truck driver for others.

It is apparent that it was on the basis of the *Davis* case that the trial judge directed the verdict for defendants. If the *Davis* case goes so far as to say that when any insurance company makes an SR-22 filing with the Department of Public Safety so that one whose driver's license has been revoked can be reinstated it thereby assures to the Department that the insured is to be covered, no matter whose vehicle or what vehicle he may drive, then we should agree that the trial judge was correct.

But the SR-22 form is supplied by the Department of Public Safety, and it is designed to apply differently in different situations. Here the form itself provides that it is filed based upon an *owner's policy* upon the particularly described vehicle—a 1962 Falcon 2 door sedan, Identification No. 2A11U166497.

On the form is a place which, if checked, would have made it based upon an *operator's policy,* as was the case in *Davis.* In that case it is provided that it is "applicable to any non-owned vehicle."

Obviously the situations are different, and were intended to be different when the form was devised.

We do not believe the *Davis* case to be applicable here. The certification to the Department is altogether different, and it should not be held that the Department or anybody else may rely upon a higher certification than was made and accepted on the Department's form. They are based upon different premiums.

As we see it, the SR-22 filing here was limited to Mr. Popham in his operation of the Ford Falcon, or by the policy terms to a vehicle which he may have acquired to replace it.

It was error to direct a verdict for the defendants. Indeed, it would appear that the evidence demanded a contrary result.

*Judgment reversed. Jordan, P. J., Hall, P. J., Deen and Clark, JJ., and Judge H. O. Hubert, Jr., concur. Pannell,*

*Quillian and Evans, JJ., dissent in part. Bell, C. J., disqualified.*

PANNELL, Judge, dissenting. The majority erroneously state that "LaSalle National filed a suit for declaratory judgment in DeKalb Superior Court June 6, 1969, seeking to have the issue of coverage vel non resolved, and thus the issue of whether it must afford defenses in the pending actions, making the executor, Mrs. Mitchell's children and Popham parties defendant," and that "All parties defendant answered the suit for declaratory judgment, urging that because of the pendency of the third-party complaint the suit for declaratory judgment could not be maintained, and asking that the suit be dismissed." There was no allegation or phrase in the petition for declaratory judgment that LaSalle National was uncertain as to whether or not it should defend the tort action, nor was there any evidence to this effect; on the contrary, the evidence is undisputed that LaSalle National refused to defend the tort action on the ground there was no coverage in the policy. The only allegation of uncertainty in the petition is as follows: "By reason of these conflicting claims, petitioner is in doubt as to its rights and legal relations in the premises, and will remain in doubt unless the question of insurance coverage has been litigated and finally determined in a proceeding binding on all parties." The answer of the defendants to the declaratory judgment action denied this allegation and raised the question that petitioner, LaSalle National, is not in doubt as to its rights and legal relations in the premises because petitioner had already denied coverage and failed and refused to defend the tort action, and was not entitled to a declaratory judgment. This defense and the proof of it, without contradiction, is entirely ignored by the majority and the majority decide the case and render a declaratory judgment based on the erroneous assumption that LaSalle National is uncertain as to whether it should defend the tort action and that it needs instruction thereon, when it has already refused to defend.

My views are as follows: 1. (a) "The Act of the General

Assembly (Ga. L. 1959, p. 236) amending *Code* § 110-1101, providing 'Relief by declaratory judgment shall be available notwithstanding the fact that the complaining party has any other adequate legal or equitable remedy or remedies' does not mean that a declaratory judgment will lie to have just any justiciable controversy decided. The ruling by the Supreme Court in *McCallum v. Quarles,* 214 Ga. 192 (104 SE2d 105) brings this matter to a clear and unequivocal conclusion." *Reliance Ins. Co. v. Brooks Lumber Co.,* 101 Ga. App. 620, 621 (115 SE2d 271); *Phoenix Assurance Co. v. Glens Falls Ins. Co.,* 101 Ga. App. 530, 532 (114 SE2d 389).

(b) And where the rights of the parties have already accrued and there are no circumstances showing any necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest, the plaintiff is not entitled to a declaratory judgment. See *State of Ga. v. Hospital Authority,* 213 Ga. 894, 898 (102 SE2d 543). The declaratory judgment action makes no provision for a judgment which is advisory. *Liner v. City of Rossville,* 212 Ga. 664 (94 SE2d 862). Therefore, when no such uncertainty and necessity is shown, there is no ground for a declaration of rights under the Act. *Brown v. Cobb County,* 212 Ga. 172, 175 (91 SE2d 516); *McCallum v. Quarles,* 214 Ga. 192, supra; *Rowan v. Herring,* 214 Ga. 370, 374 (105 SE2d 29); *Pinkard v. Mendel,* 216 Ga. 487, 490 (117 SE2d 336); *Henderson v. Alverson,* 217 Ga. 541, 542 (123 SE2d 721); *Dunn v. Campbell,* 219 Ga. 412, 415 (134 SE2d 20); *Milton Frank Allen Pubs. v. Ga. Assn. of Petroleum Retailers,* 219 Ga. 665, 671 (135 SE2d 330); *Salomon v. Central of Ga. R. Co.,* 220 Ga. 671, 672 (141 SE2d 424); *Womble v. State Board of Examiners in Optometry,* 221 Ga. 457, 459 (145 SE2d 485).

The case of *Gant v. State Farm Auto. Ins. Co.,* 109 Ga. App. 41 (134 SE2d 886) written by Judge Eberhardt for this court, conclusively demonstrates that under the facts of

this case the existence of a mere justiciable controversy is not sufficient. As was stated in that case (p. 42), "The salient issue in this appeal is whether the rights of the petitioning insurance company have already accrued"; and as was further said in that case "Notwithstanding the remedial nature of the Declaratory Judgments Act and the 1959 liberalizing amendment (Ga. L. 1959, p. 236), the rule is that a petition does not state a cause of action for a declaratory judgment where 'the rights of the parties have already accrued' and there is no necessity to protect and guide petitioner 'from uncertainty and insecurity with respect to the propriety of some future act or conduct.' *Holcomb v. Bivens,* 103 Ga. App. 86 (118 SE2d 840) and citations." In interpreting this ruling and applying it to the facts of that case it was said: "if [the insurer] has failed or refused to afford a defense to the damage action because it has made the determination that no coverage was afforded under its policy the rights, if any, of the parties had accrued before the declaratory judgment action was filed and the insurer needs no declaration to guide it as to any future action." P. 43.

(c) Where a declaration is sought as to matters or claims already pending between the parties in a court of competent jurisdiction, a declaratory judgment will be denied, where such declaration will be in nature and effect an advisory opinion to such other court. *Darnell v. Tate,* 206 Ga. 576 (2) (58 SE2d 160); *Staub v. Mayor &c. of Baxley,* 211 Ga. 1 (1) (83 SE2d 606); *Ulmer v. State Hwy. Dept.,* 90 Ga. App. 833 (84 SE2d 583); *Kiker v. Hefner,* 119 Ga. App. 629, 631 (168 SE2d 637); *Employers Liability Assur. Corp. v. Berryman,* 123 Ga. App. 71 (1) (179 SE2d 646).

2. Where, as in the present case, an action for declaratory judgment by an insurer, it appears that two death actions claiming damages for tort arising out of an automobile collision are brought against the holder of a policy of automobile liability insurance, one action being brought by the legal representative of the deceased and the other action being brought by the children of the deceased, and upon

demand by the policyholder the insurer refused to defend both actions and denied liability under the policy on the ground that no coverage was provided under the facts of the case for the reason that the automobile driven by the policyholder was not one insured under the policy, and the policyholder thereafter, in an action brought by the legal representative of the deceased, filed a third-party complaint against the insurer, and the insurer then brought the action for declaratory judgment in the present case for the purpose of determining whether there was coverage and liability under the policy, naming as defendants in the action the legal representative, the children and the policyholder, and among the defenses set forth by the defendants was that there was no proper case for declaratory judgment, and upon the hearing no contention or claim was made by the insurer that it was uncertain as to any future act or conduct but only that there was a justiciable dispute between the parties and its contention that there was no coverage under the policy, we should, in accordance with the above rulings hold the trial court was correct in directing a verdict for the defendants, even though he may have done so for erroneous reasons. We should accordingly affirm the judgment with direction that it be amended to show it is a judgment of dismissal of the declaratory judgment action, rather than any ruling upon the merits of the questions therein sought to be adjudicated.

I am authorized to state that Judges Quillian and Evans concur in this dissent.