458 A.2d 1205 (1983)
GOVERNMENT EMPLOYEES INSURANCE COMPANY
v.
CONCORD GENERAL MUTUAL INSURANCE COMPANY et al.
Supreme Judicial Court of Maine.
Argued November 4, 1982.
Decided April 14, 1983.
*1207 Hunt, Thompson & Bowie, James M. Bowie (orally), Portland, for plaintiff.
Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Phillip E. Johnson (orally), Augusta, for A. Rice.
Jack L. Schwartz, Portland, for R. Bruce.
Daviau, Jabar & Batten, John P. Jabar, Waterville, for R. Doyon.
Before GODFREY, NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ.
NICHOLS, Justice.
Government Employees Insurance Company (GEICO), Plaintiff in this action for a declaratory judgment, appeals from an order of the Superior Court (Androscoggin County) entered on April 23, 1982, requiring GEICO to defend and indemnify the Defendant, Robert L. Ifill, from any claims arising from a one-car accident that occurred March 3, 1974, on Route 9, in Randolph. GEICO contends that the automobile liability policy that it issued to Ifill and certified to the Secretary of State in conformity with the financial responsibility law, 29 M.R.S.A. §§ 781-787 (1978 & Supp. 1982-1983), was, on the date of the accident, no longer in effect and, moreover, did not extend coverage to the vehicle Ifill was then driving.
We affirm the order of the Superior Court.
This case turns on the question of whether an insurer can cancel a policy of automobile liability insurance that has been certified to the Secretary of State as proof of financial responsibility under 29 M.R.S.A. § 787(2)[1] without complying with any of the methods of cancellation set forth in the financial responsibility law.
The stipulation of facts filed by the parties in Superior Court reveals that as a result of an accident which occurred on August 27, 1966, Ifill had been required by the Secretary of State to show proof of financial responsibility in order to retain his operator's license. Ifill elected to show that proof by obtaining a policy of liability insurance from GEICO.
Early in 1971 Ifill paid GEICO a premium for a one-year motor vehicle liability policy. In compliance with the requirement that Ifill show proof of financial responsibility, GEICO filed the appropriate form with the Secretary of State certifying that it had issued Ifill a motor vehicle liability policy complying with our financial responsibility law. The form was a nationally promulgated AAMVA Uniform Financial Responsibility Form designated SR-22. Upon this form GEICO certified that the coverage was effective from June 29, 1971 and would continue "until cancelled or terminated in *1208 accordance with the financial responsibility laws and regulations of this State." Upon this form GEICO further represented that its insurance policy thereby certified was an "OWNER'S POLICY: Applicable to (a) the following described vehicle(s), [a 1971 Dodge], (b) any replacement(s) thereof by similar classification ...."
At the expiration of GEICO's one year policy early in 1972 Ifill failed to renew the policy and at no point paid GEICO any further premiums. As a result of this failure to renew, GEICO cancelled Ifill's policy and sent Ifill a notice of cancellation. GEICO, however, gave the Secretary of State no notice whatsoever that it had cancelled Ifill's insurance coverage.
The Maine financial responsibility law provides three methods by which an insurer may terminate its certification of coverage. First, the insurer may specify an expiration date for the motor vehicle liability policy on the certificate submitted to the Secretary of State. 29 M.R.S.A. § 781(1)(A).[2] The Form SR-22 that GEICO submitted on behalf of Ifill did not contain an expiration date. Second, the insurer may file notice of cancellation of insurance with the Secretary of State. 29 M.R.S.A. § 787(6).[3] Although there is another uniform form designated SR-26 available for such cancellation, GEICO failed to submit an SR-26 notifying the Secretary of State of its cancellation of Ifill's policy. Last, an insurer's certification may be cancelled by the subsequent filing of a substitute SR-22 certificate. 29 M.R. S.A. § 787(6). By none of the three methods did Ifill's insurer notify the Secretary of State.
Following cancellation of the GEICO policy, Ifill replaced his 1971 Dodge truck with a 1969 Ford pickup truck and obtained a one-year liability policy covering the pickup truck until June 30, 1974 from the Defendant, Concord General Mutual Insurance Company (Concord). Within this policy period Ifill replaced the 1969 Ford truck with a 1967 Ford F-500 six-wheel truck, and in turn replaced this truck with a 1969 Ford Mustang. It was this Ford Mustang that was being operated on March 3, 1974, when the accident occurred which gave rise to this litigation.
GEICO contends that the Superior Court erred in holding that GEICO's failure to file notice of cancellation with the Secretary of State extended its coverage until the time of the accident. We do not agree. The relevant language of our financial responsibility law is clear:
Where no expiration date is specified in the certificate, the policy or bond shall be deemed, for purposes of this subchapter, to continue in effect until it is canceled or superseded in accordance with section 787, subsection 6.
29 M.R.S.A. § 781(1)(A). By operation of law this language is incorporated into all insurance policies that are subject to our *1209 financial responsibility law. Concord General Mutual Insurance Company v. McLain, 270 A.2d 362, 365 (Me.1970). See Wescott v. Allstate Insurance, 397 A.2d 156, 166 (Me.1979).[4]
In accord with the majority of courts that have considered this issue, we conclude that where a statute provides a mandatory method for cancelling an insurance policy that has been certified under the financial responsibility law, and an insurer fails to comply with the statutory method of cancellation, the insurer is precluded from asserting that the policy has been cancelled. See, e.g., Oregon Automobile Insurance Company v. Thorbeck, 283 Or. 271, 275, 583 P.2d 543, 545 (1978); Vrabel v. Scholler, 372 Pa. 578, 583, 94 A.2d 748, 750 (1953); United States Fidelity & Guaranty Company v. Security Fire and Indemnity Company, 248 S.C. 307, 315, 149 S.E.2d 647, 651 (1966); Government Employees Insurance Company v. Mizell, 36 A.D.2d 452, 455, 320 N.Y.S.2d 936, 939 (N.Y.App.Div. 1971); Lang v. Kurtz, 100 Wis.2d 40, 47, 301 N.W.2d 262, 266 (Wis.Ct.App.1980). See generally Annot., 34 A.L.R.2d 1297 (1954).
GEICO acknowledges that the Form SR-22 that it submitted to the Secretary of State did not contain an expiration date and that no Form SR-26, Notice of Cancellation, was ever transmitted to the Secretary of State. GEICO argues, however, that Concord should have filed a substitute Form SR-22, and that GEICO's certification should be deemed to have been superseded by virtue of Concord's obligation to file a substitute certificate.
This argument does not avail GEICO. Our statute requires that a superseding certificate must be actually filed and the replacement policy must have become effective before an earlier certificate is thereby cancelled. 29 M.R.S.A. § 787(6). Furthermore, adoption of GEICO's rationale would undermine the purpose of the financial responsibility law. As we observed in McLain:
The purpose of our statute is to protect the public from the damaging operation of any motor vehicles by any driver, the driving record of whom has justified proof of financial responsibility.
270 A.2d at 365-366. Had GEICO filed notice of cancellation, the Secretary of State might have suspended both the operator's license and the motor vehicle registration he had issued to Ifill pending further proof of financial responsibility, thereby possibly avoiding any question as to coverage at the time of the accident.
GEICO also asserts that more than three years elapsed between the time the Secretary of State last requested Ifill to show proof of financial responsibility in 1967, and the date of the accident, March 3, 1974. GEICO contends that because more than three years had passed, the obligation to show proof of financial responsibility had terminated; hence, any certification of a motor vehicle liability policy had lapsed. This argument misreads the applicable statutory provision. Section 783(2)(A) of Title 29 merely states the possibility that:
The Secretary of State may waive the requirement of filing proof of financial responsibility at any time after 3 years from the date of request for compliance....
Nothing in this section requires the Secretary of State to waive the requirement of filing proof of financial responsibility after three years, nor is there any indication in the record before us that the Secretary of State actually did waive the requirement in Ifill's case.
GEICO next argues that the Ford Mustang involved in the accident was not covered under the policy that GEICO had earlier certified to the Secretary of State. We must reject this argument as well.
The extent of GEICO's coverage turns in the first instance on such mandatory *1210 statutory provisions as are incorporated into the insurance policy by operation of law, and in the second instance on the terms of the policy itself. Wescott v. Allstate Insurance, 397 A.2d at 166; Concord General Mutual Insurance Company v. McLain, 270 A.2d at 364.
The Superior Court concluded that GEICO's failure to file notice of cancellation with the Secretary of State operated to keep GEICO's policy in effect and to extend the coverage under that policy to any vehicles that Ifill owned. While we agree that failure to file a notice of cancellation operates to keep GEICO's policy in effect, we find no language in the financial responsibility law suggesting that an insurer who certifies a policy to the Secretary of State may not limit the coverage provided by that policy to named vehicles or replacements thereof.
The defendants, on their part, urge that the statutory language defining a "motor vehicle liability policy" evidences the Legislature's intent to require all owner's policies certified under the financial responsibility law to extend coverage to any vehicle owned or operated by the named insured. This language defines a "motor vehicle liability policy" as a policy of liability insurance which:
Provides indemnity for or protection to the insured and any person responsible to him for the operation of the insured's motor vehicle ... against loss by reason of the liability to pay damages to others for damage ... arising out of the ownership, operation, maintenance, control or use ... of such motor vehicle ....
(Emphasis added). 29 M.R.S.A. § 781(1)(D). Notwithstanding the defendants' contentions, we find no evidence in this language or in any other section of the statute revealing a legislative intent to require all owners' policies certified as proof of financial responsibility to extend coverage to any vehicle owned by the insureds.
The language of section 786(1) of the statute warrants a contrary conclusion. That section requires insurers to submit to the Insurance Superintendent copies of any policy forms that are to be certified as proof of financial responsibility. The section states in pertinent part:
Said Insurance Superintendent shall approve a form of policy which contains the name and address of the insured, a description of the motor vehicles and trailers or semitrailers covered, with the premium charges therefor, the policy period, the limits of liability and an agreement that insurance is provided in accordance with and subject to this subchapter.
(Emphasis added). 29 M.R.S.A. § 786(1). It is apparent from the language requiring the insurer to specify those vehicles covered by the policy that the Legislature envisioned vehicle-specific coverage. The Alaska Supreme Court has interpreted similar language in a comparable Alaska statute as permitting vehicle-specific coverage despite the contention that certification of an owner's policy under that state's Motor Vehicle Safety Responsibility Act required insurers to cover all vehicles owned by the insured. Paulson v. National Indemnity Company, 498 P.2d 731, 735 (Alaska 1972).
We conclude that our own financial responsibility law does not require that an owner's policy, certified as proof of financial responsibility, cover all vehicles owned by the insured.[5]
Having determined that GEICO's coverage is not extended to all subsequently acquired *1211 vehicles by operation of law, next it becomes necessary to determine whether the Ford Mustang involved in this accident was covered by the terms of the policy. Like the Superior Court, we must make our determination on the facts to which the parties stipulated and upon limited documentary evidence.
Adverting to GEICO's policy, which was included in the record by stipulation of the parties, we note that it extends coverage to injuries arising out of the ownership, maintenance or use of the "owned automobile." We further note that the policy defines "owned automobile" as
(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
* * * * * *
(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) it replaces an owned automobile as defined in (a) above ....
GEICO is precluded from asserting that the Ford Mustang was not acquired "during the policy period." GEICO's failure to file notice of cancellation extended the policy period by operation of law to the date of the accident.
Furthermore, the Ford Mustang was a replacement for the 1971 Dodge truck. While insurers are free to define "replacement" as the word may be used in a given policy, GEICO failed to do that in this instance. The facts are that Ifill successively replaced the original 1971 Dodge truck with other vehicles before eventually acquiring the Ford Mustang involved in the accident. The record is devoid of evidence that Ifill still owned the 1971 Dodge at the time of the accident or then owned any vehicle other than the Ford Mustang.[6] In this state of the record, and in view of the doctrine requiring that ambiguities in insurance contracts be construed most strongly against the insurer, Patrons Mutual Insurance Company v. Rideout, 411 A.2d 673, 676 (Me. 1980), Ross v. Travelers Indemnity Company, 325 A.2d 768, 770 (Me.1974), we conclude that the Ford Mustang was an "owned automobile" for purposes of the GEICO policy.[7]
GEICO argues that the language in the Form SR-22 that it filed with the Secretary of State limiting the certification to the described vehicle and any replacements thereof by "similar classification" should be given binding effect. GEICO claims that this language relieves it of liability because the Ford Mustang that was involved in the accident was not of the same classification as the Dodge truck which it had certified. We do not agree.
The AAMVA Uniform Financial Responsibility Form SR-22 submitted by GEICO may be a form widely used by insurers, *1212 but the language in that form limiting coverage to "replacement vehicles of similar classification" is not a part of the insurance contract existing between the parties, nor is this form a provision of the Maine statute incorporated into the contract by operation of law. Accordingly, the language is not part of the contract of insurance and cannot serve to limit GEICO's contractual liability. Cf. Wescott v. Allstate Insurance, 397 A.2d 156, 166 (Me.1979); Zamore v. Whitten, 395 A.2d 435, 440 (Me.1978).
In sum, we conclude GEICO is contractually obligated to defend and indemnify Ifill from claims arising from the accident of March 3, 1974.
The entry is:
Appeal denied.
Judgment affirmed.
All concurring.
NOTES
[1] 29 M.R.S.A. § 787(2) provides in pertinent part:

2. Methods of giving proof. Proof of financial responsibility when required under this subchapter may be given by any of the following methods:
A. By filing with the Secretary of State a certificate, as defined in section 781, of an insurance company or of a surety company....
[2] 29 M.R.S.A. § 781(1)(A) provides in pertinent part:

... The insurance company or surety company may, at its election, specify on such certificate the expiration date of the motor vehicle liability policy or bond and, if such company elects to so provide the policy or bond shall, on and after such date, be deemed terminated for purposes of this subchapter, unless such policy or bond is previously canceled or superseded in accordance with section 787, subsection 6. Where no expiration date is specified on the certificate, the policy or bond shall be deemed, for the purposes of this subchapter, to continue in effect until it is canceled or superseded in accordance with section 787, subsection 6.
[3] 29 M.R.S.A. § 787(6) provides:

6. Cancellation of policy or bond. No motor vehicle liability policy or bond certified as proof of financial responsibility pursuant to subsection 2, paragraph A shall be canceled until at least 10 days after notice of cancellation of the insurance or bond so certified shall be filed in the office of the Secretary of State, except that such a policy or bond subsequently procured and certified shall, on the effective date of its certification, terminate the insurance or bond previously certified with respect to any motor vehicle designated in both certificates.
[4] See also 1 Couch on Insurance 2d § 13:6, p. 533 (1959 & Supp.1982).
[5] Other jurisdictions faced with this issue have reached the same conclusion we now reach regarding the meaning of their respective financial responsibility laws. See LaSalle National Insurance Company v. Pophan, 125 Ga.App. 724, 735, 188 S.E.2d 870, 876 (1972); Crockett v. Collins, 308 So.2d 391, 393 (La.Ct.App.1975); Garrison v. Farm Bureau Mutual Insurance Company, 84 Mich.App. 734, 736, 270 N.W.2d 678, 679 (1978); Howell v. Travelers Indemnity Co., 237 N.C. 227, 231, 74 S.E.2d 610, 614 (1953); State Farm Mut. Automobile Ins. Co. v. Bass, 192 Tenn. 558, 571, 241 S.W.2d 568, 571 (1951). But see Globe Mutual Casualty Co. v. Teague, 14 Ohio App.2d 186, 194, 237 N.E.2d 614, 619 (1967).

See also 6B Appleman, Insurance Law and Practice § 4295, p. 254 (Buckley ed. 1979).
[6] The majority of states that have considered this issue accept the proposition that for an acquired vehicle to "replace" the vehicle described in the policy, the described vehicle must have been disposed of or be inoperable. 6B Appleman, Insurance Law and Practice at § 4293, 162-164. See e.g., Carolina Casualty Insurance Company v. Mergenthaler, 372 A.2d 174, 175 (Del.1977); Corbett v. Allstate Insurance Company, 396 Mich. 103, 105, 238 N.W.2d 30, 31 (1976). See generally Annot., 34 A.L. R.2d 936, § 9 (1954).
[7] Cf. Carney v. American Fire & Indemnity Company, 371 So.2d 815, 818 (La.1979) (ambiguity in policy language construed against insurer to include coverage of race car within family policy); Patrick v. State Farm Mutual Automobile Insurance Company, 90 N.J.Super. 442, 217 A.2d 909 (Super.Ct.Law Div.1966). (pickup truck which replaced succession of automobiles held replacement vehicle for originally described passenger car where policy contained no requirement that replacement vehicle be "of equivalent use").